UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEANNA LETRAY,<br><br>                              Plaintiff,<br><br>v.<br><br>JEFFERSON COUNTY; CITY OF WATERTOWN; COLLEEN O'NEILL, Jefferson County Sheriff; KRISTOPHER M. SPENCER; JOEL DETTMER; CHARLES DONOGHUE, City of Watertown Police Chief; GEORGE CUMMINGS; SAMUEL WHITE; DEBORAH DAVIS and PATRICK LARKINS,<br><br>                              Defendants. | 20-CV-1194 (FJS)(TWD) |

**JOINT PRE-TRIAL STIPULATION**

1. **Basis of Federal Jurisdiction**

    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a).

2. **List of Exhibits Which the Parties Can Stipulate into Evidence or Which the Parties Will Offer Without Objection as to Foundation**

    The parties reserve their right to make all appropriate evidentiary objections to any exhibits not jointly stipulated to. Otherwise, the parties stipulate to the following exhibits:

| Number | Description | Stipulate as to Foundation Only | Stipulate into Evidence |
|---|---|---|---|
| **Plaintiff's Exhibits** | | | |
| P-1 | Jefferson County Sheriff's Office Corrections Division Policy on Individual Searches (Effective Date: November 27, 2014) (Cnty. Def. - 000248–254) | | X |

| | | | |
|---|---|---|---|
| P-2 | Jefferson County Sheriff's Office Corrections Division Policy on Individual Searches (Effective Date: November 1, 2017) (Cnty. Def. - 000236–245) | | X |
| P-3 | State Commission of Correction Lesson Plan for the Training on "Handcuffing and Inmate Searches" (Dated: January 27, 2003) (Cnty. Def. - 000273–295) | | X |
| P-4 | Jefferson County Jail Staff Assignment Duty Form (Dated: September 28, 2017) (Cnty. Def. - 000073) | | X |
| P-5 | DeAnna LeTray's Jefferson County Sheriff Receipt for Property Returned (Dated: 9/28/2017) (Cnty. Def. - 000083) | | X |
| P-6 | Jefferson County Sheriff's Office Correctional Facility Inmate Property (Dated: September 28, 2017) (LeTray 000045) | | X |
| P-7 | Blank Jefferson County Jail Intake Forms (Cnty. Def. - 000065–70) | | X |
| P-8 | Jefferson County Sheriff's Office Code of Conduct (Dated 2020) (Cnty. Def. - 000299–343) | | X |
| P-9 | Watertown Police Departmental Order on Prisoner Booking (V1/A3/S90.55-90.58) (W - 161–164) | | X |
| P-10 | Watertown Police Departmental Order on Biased-Based Enforcement (V1/A3/S42.00) (W - 194–199) | | X |
| P-11 | Watertown Police Departmental Order on the Search of Prisoners (V1/A3/S90.55-90.58) (W - 162–163) | | X |
| P-12 | DeAnna LeTray's Social Security Administration Benefit Verification Letter (Dated: March 29, 2021) [REDACTED] (LeTray000482–487) (Confidential) | | X |
| P-13 | DeAnna LeTray's 2018 Income Tax Return [REDACTED] (LeTray 000367–389) (Confidential) | | X |
| P-14 | DeAnna LeTray's W-2 Forms from TiffCo Industries [REDACTED] (LeTray000411–414) (Confidential) | | X |
| P-15 | DeAnna LeTray's Payment History [REDACTED] (LeTray000415–426) (Confidential) | | X |

| | | | |
|---|---|---|---|
| P-16 | DeAnna LeTray's Booking Photos (W - 406–408) | | X |
| P-17 | Watertown Police Departmental Policy on Courtesy (V1/A1/S.05.01) (Dated: November 3, 2003) (W - 405) | | X |
| P-18 | DeAnna LeTray's 2019 Income Tax Return [REDACTED] (LeTray 000390–410) (Confidential) | | X |
| P-19 | WPD Officer Complaint Form, Disposition, and Memorandum dated October 15, 2020 (W - 288–313) | X | |
| P-20 | WPD Memorandum statement by George Cummings dated 7/12/20 (W- 323–324) | X | |
| P-21 | WPD statement by George Cummings dated 7/20/20 (W - 325–330) | X | |
| P-22 | Curriculum Vitae of Dr. Randi Ettner | | X |
| **Watertown Defendants' Exhibits** | | | |
| D-2 | Notice of Claim, dated Dec. 28, 2017 (W – 76–79) | | X |
| D-3 | Email from Plaintiff dated Jan 8, 2018 (LeTray000567–569) | X | |
| D-7 | Order to Change Name, dated March 19, 2019 (LeTray000491) (Confidential) | X | |
| D-14 | Sworn Statement of Plaintiff, dated Aug. 17, 2020 (LeTray000748–755) | X | |
| D-18 | Correctional Facility Inmate Property Form, dated Sept. 28, 2019 (Cnty. Def. 125) | | X |
| D-19 | Use of Force Policy (W - 176–187) | | X |
| D-20 | Use of Deadly Force Policy (W - 171–175) | | X |
| **Jefferson County Defendants' Exhibits** | | | |
| D-30 | NYS Division of Human Rights Complaint Form (W - 83–86) | X | |
| D-33 | Second Amended Complaint | | X |
| D-34 | Jefferson County Sheriff's Office Corrections Division Policy Number CD-05-08-03 (Cnty. Def. - 222–226) | | X |
| D-35 | Jefferson County Sheriff's Office Corrections Division Policy Number CD-10-14-00 (Cnty. Def. - 228–232) | | X |
| D-36 | Jefferson County Sheriff's Office Corrections Division Policy Number CD-16-00-00 (Cnty. Def. - 000039) | | X |

3

| | | | |
|---|---|---|---|
| D-37 | Jefferson County Sheriff's Office Corrections Division Policy Number CD-16-01-00 (Cnty. Def. - 000040) | | X |
| D-38 | Jefferson County Sheriff's Office Corrections Division Policy Number CD-16-01-01 (Cnty. Def. - 000041) | | X |
| D-39 | Jefferson County Sheriff's Office Corrections Division Policy Number CD-16-01-04 (Cnty. Def. - 000047) | | X |
| D-42 | Basic Course for Correction Officer's Inmate Searches (Cnty. Def. - 000293–295) | | X |
| D-45 | Plaintiff's Objections and Responses to the Defendant's Interrogatories dated June 21, 2021 | X | |
| D-46 | Social Security Records [REDACTED] (LeTray000988–1377) (Confidential) | | X |

### 3. Relevant Facts Not in Dispute and Facts in Dispute and Issues of Law

#### a. Relevant Facts Not in Dispute

1. On the night of September 28, 2017, Ms. LeTray was wearing makeup that was visible to others: foundation, lipstick, blush, eyeliner, and eyeshadow. She had on her long red wig, and she wore boho pants, shoes, a crop top, and a belt. She was also carrying a pleather purse. Below her clothing, she had on her prosthetic breasts.

2. That night, the Watertown Police Department ("WPD") was called to the residence of Joshua Coffey at 1418 State Street in the City of Watertown.

3. WPD Officers George Cummings and Samuel White responded to that call and arrived at 1418 State Street.

4. Ms. LeTray obtained a court-ordered name change in March 2019.

5. Ms. LeTray was arrested and transported to the Watertown Police Department.

6. Officer Cummings checked off "M" for male in the WPD New York State Arrest Report Form.

4

7. WPD officers record people's aliases if that individual goes by a name that is different from their name that appears on their government-issued identification.

8. All WPD records from that night document Ms. LeTray as a male and use he/him pronouns.

9. Upon her arrival at the Jefferson County Correctional Facility, she was processed.

10. Manual body cavity searches are prohibited under Jefferson County Correctional Facility policy absent a court order, which must first be requested by a Facility Administrator. If a court order is issued, only medical personnel are authorized to perform a manual body cavity search.

11. Defendant Jefferson County is a county organized under the laws of the State of New York. The Jefferson County Sheriff's Office operates the Jefferson County Correctional Facility and is an agency of Jefferson County.

12. Defendant City of Watertown is a municipal corporation within the State of New York. The Watertown Police Department is an agency of the City of Watertown.

13. Pursuant to a longstanding inter-municipal agreement between the City of Watertown and Jefferson County originally dating to 1989, the Watertown Police Department may hold certain pre-arraignment arrestees within designated spaces at the JCCF until the individual's arraignment, at which time WPD officers return to the jail to transport the individual to the appropriate court for their arraignment.

14. Policy Number CD-16-01-01, which went into effect on January 11, 2014, governs the searches of WPD arrestees in the Jefferson County Jail. This policy explicitly notes that "all strip searches will be conducted by corrections staff." It also acknowledges that personal searches of arrestees will be done in accordance with the Jefferson County Sheriff's Office Correctional Facility Policy Number CD-05-03-02.

15. The policy requires all new admissions to be pat searched "totally and completely" before handcuffs/restraints are removed.

16. Colleen O'Neill was elected Sheriff of Jefferson County in November 2014.

17. As Sheriff, Colleen O'Neill is the final signatory on all the policies and procedures for the Jefferson County Sheriff's Office Corrections Division.  This includes any updates or amendments to existing policies and procedures.  Sheriff O'Neil must review and approve all policies before they go into effect.

18. Sheriff O'Neill is familiar with the Jail's search policies.

    b. **Relevant Facts in Dispute**

        i. **Plaintiff**

The Plaintiff DeAnna LeTray is a 56-year-old transgender woman. At trial, Ms. LeTray will prove that since she was young, she knew that she was a girl and throughout her life, she experienced varying degrees of distress because of the incongruence between her gender identity and her birth-assigned sex. As with many gender dysphoric individuals, when Ms. LeTray reached middle age, she felt an urgency to address and quell her lifelong distress. As such, starting in 2010, Ms. LeTray began living in her affirmed female gender. In the parts of her life that felt safe, she began wearing women's clothing, putting on make-up, wearing a feminine wig, and going by the name "DeAnna." Ms. LeTray did not feel safe expressing her true gender identity at her workplace. This process, known as "social role transition," is a common feature of the standards of care for gender dysphoria. From a medical perspective, it is important for a transgender woman to be treated as a female, as this greatly assists in alleviating one's gender dysphoria. Experiences of misgendering, harassment or exposure are corrosive to the physical and mental health of a transgender woman.

On the night of September 28, 2017, Ms. LeTray went to speak to her ex-wife's landlord, Josh Coffey, to request that he lower her ex-wife's rent payments so that they could afford to pay their mortgage. Ms. LeTray's gender presentation that night was that of a woman. Mr. Coffey threatened her with a shotgun and ridiculed her appearance as a woman. As Coffey exited his home with the shotgun, Ms. LeTray yelled for help and ran away from the house. Once the WPD arrived, WPD Officer Cummings approached the house and observed Josh Coffey holding a shotgun in his left hand while walking towards Ms. LeTray. Shortly thereafter, WPD officers walked towards Ms. LeTray after Josh Coffey pointed in her direction and asserted that "he" was the problem. Despite Coffey's use of male pronouns when referring to Ms. LeTray, Officer White acknowledged that the person he was pursuing—Ms. LeTray—appeared to be a female.

Officer Cummings asked Plaintiff for her name, and she provided him with both the name she chooses to use, DeAnna LeTray, and the name that appeared on her government-issued ID at the time, which was a masculine name (her deadname). In this initial interaction, Ms. LeTray also explained that she was a transgender woman and identifies as feminine. But even after learning that Ms. LeTray was a transgender woman, WPD officers continued refer to her using male pronouns. Officer Cummings called her a "guy" and a "man dressed like a woman." Officer Cummings called her a liar, asked her how long she had been dressed "like that," and asked her questions about her genitalia. Officer Cummings continued to refer to her by male pronouns and by the name that appeared on her ID.

Officer Cummings asked Ms. LeTray how she planned on getting home. She told him that she would walk because she was too shaken up to drive. Officer Cummings told her, "We can't let you walk the streets looking and dressed like that." Officers then searched Ms. LeTray and placed her in a police car. Ms. LeTray asked Officer Cummings why she was being arrested, and he told her it was because "you have serious mental problems—you are a guy dressed like a woman." Ms. LeTray asserts that for the remainder of the night, WPD officers continued to refer to her by male pronouns and her legal name; they mocked the way she was dressed and repeatedly called her "a man dressed like a woman."

When they arrived at the police station, Officer White told Ms. LeTray that they needed to take a booking photo. Ms. LeTray asked if she could fix her hair for the photo and Officer White said that would be fine. Ms. LeTray then removed her rose gold spring butterfly hairclip and placed it on the table near them as she attempted to fix her hair. Ms. LeTray asked if she could at least remove her makeup so that she could comply with their request. Because Ms. LeTray had been crying, her makeup was streaming down her face. She felt that it would be humiliating to take her booking photo without her hair and with her makeup on. The officers would not allow Ms. LeTray to wash her makeup off. Ms. LeTray then refused to take the booking photo because she felt it would be humiliating.

The officers then ordered Ms. LeTray to a holding cell. On her way to the cell, Ms. LeTray picked up her hairclip to fix her hair. Officer Cummings yelled at her and demanded to know what was in her hand. Ms. LeTray told him it was her hair clip, but the officers then jumped on her and threw her to the ground. While she was face down on the ground, Officer Cummings ripped her wig off her head, ripping out some of her natural hair along with it. Officer Cummings did not ask her to drop the item in her hand before the officers grabbed her and threw her to the ground. The officers then placed Ms. LeTray in restraints. Officer Cummings then said to Ms. LeTray, "you are going to go to the jail and get strip searched . . . we are going to show you that you are a man. You are going to love that."

At the jail, after performing the strip search and visual cavity search, Sergeant Joel Dettmer informed Ms. LeTray he would perform a manual cavity search on her. He then put on latex gloves and dipped his fingers in lubricant. Ms. LeTray asked if there was a more private room to conduct the search and he told her there was not. She then asked if a female officer could conduct the search, because she identifies as female and would feel more comfortable with a female officer. Sergeant Dettmer then gestured towards Ms. LeTray's genitals and asked, "if

7

you are a woman then what is that?" She responded by referring to her genitals with a term stereotypically associated with women's genitalia. He then asked her what she calls her rectum, and she responded with another term stereotypically associated with women's genitalia. Officer Dettmer told Ms. LeTray that she could not have a female officer conduct the search, and that he would do the search because "you are a man." Officer Dettmer then stuck his finger into Ms. LeTray's rectum several times. He then lifted up Ms. LeTray's scrotum and penis numerous times. The entire search was done in the area traditionally reserved for "pat-downs" and in plain view of Officer Cummings, Corrections Officer Patrick Larkins, and Corrections Officer Deborah Davis, none of whom took any action to prevent or stop Sgt. Dettmer's actions.

Officer Dettmer, Officer Cummings and others present used male pronouns when referring to Ms. LeTray and used her masculine name despite her stated desire to be called DeAnna. They also made derogatory comments and sexually harassed Ms. LeTray for being a transgender woman.

Once she was taken to her cell that night, Ms. LeTray cried in her cell for most of the night and screamed for her mother and even contemplated suicide. Since that night, Ms. LeTray has suffered from post-traumatic stress disorder, depression, and anxiety, and remains afraid of the police and corrections officers. Ms. LeTray will prove that the WPD's and the Jail's treatment of her was inappropriate and inconsistent with accepted standards of care for transgender individuals, and that Ms. LeTray's experience of being detained by law enforcement officers who verbally attacked her identity, harassed her, and violated her sexually resulted in her psychological trauma. As a result of this incident, Ms. LeTray has sought therapy. At the time, in addition to being employed at TIFCO industries, Ms. LeTray was also employed elsewhere and was unable to continue to work at any job as a result of this incident, which has resulted in lost earnings. Since this incident, Ms. LeTray has obtained Social Security Disability Leave due to mental health impairment.

### ii. Watertown Defendants

The Watertown Defendants deny Ms. LeTray's version of the events of September 28, 2017. They deny mocking Ms. LeTray. They deny using excessive force during the arrest or during processing following the arrest. They arrested Plaintiff upon the supporting deposition and at the request of Joshua Coffey. They further charged Plaintiff with possession of narcotics when MDMA was located in her purse following that arrest. They further charged her with obstructing governmental administration when she refused to cooperate with processing. They completed their paperwork referencing Plaintiff as Anthony Campanaro because that was the name on the New York State Drivers License she was carrying at the time. They deny being present in the Jail when Corrections Officer Dettmer conducted the strip search of Plaintiff.

### iii. Jefferson County Defendants

On September 27, 2017, following Plaintiff's arrest by the Watertown City Defendants, Plaintiff was transported by Watertown City Defendants to the Jefferson County Correctional Facility's sallyport where Defendants Dettmer and Davis were present. First, Plaintiff underwent a pre-arraignment screening. Dettmer then asked Plaintiff her gender and she responded male.

Dettmer therefore entered her gender as male in Jefferson County Correctional Facility's booking paperwork. Dettmer then completed a pat search of Plaintiff following her pre-arraignment screening. Defendant Larkins was present during the pat search and Dettmer did not observe Larkins make any comments about Plaintiff's appearance.

Dettmer then escorted Plaintiff from the pat search area to the strip search area to be strip searched. There was no one else in the room with Plaintiff and Dettmer when he performed the strip search. He instructed Plaintiff to remove her clothing one at a time and instructed Plaintiff to lift her penis so he could visually inspect, and then turn around and squat so that he could inspect for contraband. Once Dettmer completed his visual body cavity search of Plaintiff, he instructed Plaintiff to put her clothing back on. At no point during the strip search did Dettmer touch Plaintiff. At no point during Plaintiff's detention, did Dettmer or other Staff make any comments about Plaintiff's genitals or appearance.

At trial, the Jefferson County Defendants will demonstrate that Dettmer was acting in accordance with the Jefferson County Strip Search Policy, which requires City of Watertown detainees to be strip searched. Additionally, the Jefferson County Defendants will demonstrate that the policy maintained by the County in September of 2017, of identifying and determining the sex of the searching officer based upon the genitalia of the detainee (rather than based upon gender identification) was lawful. Additionally, the County Defendants will demonstrate that the implementation of the policy complained of was lawful.

The Jefferson County Defendants will also show that Dettmer did not sexually assault Plaintiff, and that he merely performed a visual body cavity search consistent with the Jail's Strip Search policy.

### c. Issues of Law That the Court Must Consider and Apply

#### i. Plaintiff's Issues of Law

1. The evidentiary issues raised by the parties in their respective motions *in limine*.

2. On Plaintiff's equal protection claim, as discussed in this Court's Summary Judgment Order, ECF 119, the level of scrutiny that applies and whether any purported justification for differential treatment of the Plaintiff constitutes an exceedingly persuasive justification.

3. If judgment is in favor of Plaintiff, the question of whether Defendants are permitted to rely on the defense of qualified immunity.

4. If judgment is in favor of the Plaintiff, the appropriateness of injunctive relief.

      ii. **Watertown Defendants' Issues of Law**

1. Whether Plaintiff has identified a clearly established constitutional right to be referenced in arrest reports by other than her legal name as shown on the New York State Driver's License in her possession on September 28, 2017;

2. Whether Plaintiff has identified a clearly established right to wear a wig during the taking of a booking photograph, when the Driver's License photograph she was carrying on September 28, 2017, showed her with short brown hair, and when she frequently presented at work and to family members with that appearance;

3. Whether Plaintiff has identified a clearly established right to refuse to remove a wig during processing in order for the Police Officers to inspect the wig for contraband.

4. Whether defendants Cummings and White are entitled to qualified immunity.

      iii. **Jefferson County Defendants' Issues of Law**

1. Whether Defendants are entitled to rely on the defense of qualified immunity.

**4. Other Joint Pre-Trial Stipulations**

The parties further enter into the following joint pre-trial stipulations:

1) All parties stipulate that, for the purpose of Ms. LeTray's section 1983 claims, the individual defendants were all acting under color of state law.

2) Ms. LeTray and the Watertown Defendants stipulate that, at all times relevant to Ms. LeTray's allegations, Chief Charles Donoghue had final policymaking authority as to the Watertown Police Department.

3) Ms. LeTray and the Jefferson County Defendants stipulate that, at all times relevant to Ms. LeTray's allegations, Sheriff Colleen O'Neill and Jail Administrator Kristopher Spencer had final policymaking authority as to the Jefferson County Correctional Facility.

Dated: June 10, 2024
      New York, New York

Respectfully submitted,

/s/ Jessica Perry
Jessica Perry (702461)
Robert Hodgson (518648)
Veronica Salama (703812)
Molly K. Biklen (515729)
NEW YORK CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
E-mail: jperry@nyclu.org

/s/ Joshua Cotter
Joshua Cotter (518217)
Samuel C. Young (508916)
LEGAL SERVICES OF CENTRAL NEW
   YORK, INC.
221 South Warren Street, 3rd Floor
Syracuse, New York 13202
Tel: (315) 703-6500
Fax: (315) 703-6520
E-mail: jcotter@lscny.org

*Counsel for Plaintiff DeAnna LeTray*

/s/ Jonathan Fellows
Jonathan Fellows (101628)
Collin Michael Carr (703125)
BOND SCHOENECK & KING, PLLC –
   SYRACUSE
One Lincoln Center
Syracuse, NY 13202
E-mail: fellowj@bsk.com

*Counsel for Defendants City of Watertown, Charles Donoghue, George Cumming & Samuel White*

/s/ Kayla Arias
Kayla Arias (519953)
Brian Whiteley (515896)
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Tel: (315) 413-7227
Fax: (315) 703-7306
E-mail: karias@barclaydamon.com

*Counsel for Defendants Jefferson County, Colleen O'Neill, Kristopher M. Spencer, Joel Dettmer, Deborah Davis & Patrick Larkins*