UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DEANNA LETRAY,

　　　　　　　　　Plaintiff,

　　　v.

JEFFERSON COUNTY; CITY OF
WATERTOWN; COLLEEN O'NEILL, Jefferson
County Sheriff; KRISTOPHER M. SPENCER;
JOEL DETTMER; CHARLES DONOGHUE, City
of Watertown Police Chief; GEORGE
CUMMINGS; SAMUEL WHITE; DEBORAH
DAVIS and PATRICK LARKINS,

　　　　　　　　　Defendants.

20-CV-1194 (FJS)(TWD)

---

## PLAINTIFF'S PRE-TRIAL MEMORANDUM OF LAW

NEW YORK CIVIL LIBERTIES UNION
　　FOUNDATION

Jessica Perry (702461)
Robert Hodgson (518648)
Veronica Salama (703812)
Molly K. Biklen (515729)
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
E-mail: jperry@nyclu.org
　　　　vsalama@nyclu.org
　　　　rhodgson@nyclu.org
　　　　mbiklen@nyclu.org


Dated: June 10, 2024
　　　　New York, New York

LEGAL SERVICES OF CENTRAL NEW
　　YORK, INC.

Joshua Cotter (518217)
Samuel C. Young (508916)
221 South Warren Street, 3rd Floor
Syracuse, New York 13202
Tel: (315) 703-6500
Fax: (315) 703-6520
E-mail: jcotter@lscny.org
　　　　samyoung@lscny.org

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

PROCEDURAL HISTORY ..................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT ........................................................................................................... 5

I.      DEFENDANTS ARE LIABLE TO PLAINTIFF FOR FEDERAL AND NEW YORK
        STATE EQUAL PROTECTION VIOLATIONS. ....................................... 5

        A.      Differential Treatment ..................................................... 6

        B.      Heightened Scrutiny ........................................................ 7

II.     DEFENDANTS ARE LIABLE TO PLAINTIFF FOR VIOLATING NEW YORK
        CIVIL RIGHTS LAW SECTION 40-C. .................................................... 9

III.    DEFENDANT DETTMER IS LIABLE TO PLAINTIFF FOR AN
        UNREASONABLE MANUAL BODY CAVITY SEARCH. ..................... 11

IV.     DEFENDANT DETTMER IS LIABLE TO PLAINTIFF FOR SEXUAL
        ASSAULT. ................................................................................................ 12

V.      DEFENDANTS CUMMINGS, LARKINS, AND DAVIS ARE LIABLE TO
        PLAINTIFF FOR FAILURE TO INTERVENE. ....................................... 13

VI.     DEFENDANTS CUMMINGS, WHITE, AND DETTMER ARE LIABLE TO
        PLAINTIFF FOR EXCESSIVE FORCE. .................................................. 13

VII.    DEFENDANTS CITY OF WATERTOWN AND JEFFERSON COUNTY ARE
        SUBJECT TO MONELL LIABILITY. ...................................................... 14

VIII.   DEFENDANTS DONOGHUE, O'NEILL, AND SPENCER ARE PERSONALLY
        LIABLE. .................................................................................................... 16

IX.     DEFENDANTS ARE LIABLE TO PLAINTIFF FOR DAMAGES. ......... 17

        A.      Compensatory Damages ................................................. 17

        B.      Statutory Penalties Under Civil Rights Law Sections 40-c, 40-d. ................. 19

        C.      Exemplary or Punitive Damages .................................... 20

X.      DEFENDANTS ARE LIABLE TO PLAINTIFF FOR INJUNCTIVE RELIEF ......... 20

i

ANTICIPATED EVIDENTIARY ISSUES........................................................................ 21

CONCLUSION.............................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**                                                                                               Page(s)

*Adkins v. City of New York*, 143 F. Supp. 3d 134 (S.D.N.Y. 2015) .............................................7, 8

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004)..........................................14

*Anderson v. Branen,* 17 F.3d 552 (2d Cir. 1994)...........................................................................13

*Aurecchione v. New York State Div. of Hum. Rts.*, 98 N.Y.2d 21 (2002)....................................10

*Bermudez v. City of New York*, No. 11 Civ. 750, 2014 WL 11274759 (S.D.N.Y. Mar. 25, 2014) ...............................................................................................................................17

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020)...............................................................7

*Brown v. State*, 89 N.Y.2d 172 (1996)...........................................................................................6

*Burke v. Cicero Police Dep't*, No. 07 Civ. 624 (FJS/DEP), 2011 WL 1232107 (N.D.N.Y. Mar. 30, 2011) ..........................................................................................................................13, 17

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)...................................................................15

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ........................................5, 7

*Coffey v. Joy*, 91 A.D.2d 923 (1st Dept. 1983), *aff'd*, 59 N.Y.2d 643 (1983) ..............................11

*Connick v. Thompson*, 563 U.S. 51 (2011) ...................................................................................15

*Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015)..................................................................12, 13

*Doe v. City of New York*, 42 Misc. 3d 502 (Sup. Ct. 2013) ..........................................................10

*Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016) ...........................................................................14

*Gordon v. PL Long Beach, LLC*, 74 A.D.3d 880 (2d Dept. 2010) ..................................................9

*Graham v. Connor*, 490 U.S. 386 (1989) .....................................................................................12

*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020)...........................................7, 8

*Harris v. Miller,* 818 F.3d 49 (2d Cir. 2016) ...............................................................................11

*Haywood v. Koehler,* 78 F.3d 101 (2d Cir. 1996)........................................................................17

*Hecox v. Little*, 79 F.4th 1009 (9th Cir. 2023), *withdrawn,* 99 F.4th 1127 (9th Cir. 2024).........7, 8

*Henry v. Gross*, 803 F.2d 757 (2d Cir. 1986) ..............................................................................17

*Hernandez v. Robles*, 855 N.E.2d 1 (2006) ..................................................................6

*Hess v. Garcia*, 72 F.4th 753 (7th Cir. 2023) ...............................................................12

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007).......................................................15

*Illiano v. Union Free Sch. Dist.*, 585 F. Supp. 2d 341 (E.D.N.Y. 2008).........................9

*In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383 (S.D.N.Y. 2021) ................................................................................................16

*Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) ....................................................................................................11

*Jean-Laurent v. Wilkinson*, 540 F. Supp.2d 501 (S.D.N.Y. 2008), *aff'd sub. nom.*, 461 F. App'x 18 (2d Cir. 2012) ...........................................................................................13

*Jeanty v. City of New York*, No. 18 Civ. 5920, 2021 WL 276553 (S.D.N.Y. Jan. 27, 2021) ......................................................................................................................19

*J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127 (1994) ..............................................................6

*Jessamy v. Ehren*, 153 F. Supp. 2d 398 (S.D.N.Y. 2001)..............................................18

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 590 N.E.2d 228 (1992)......................................................................................................................20

*Khan v. Hip Centralized Lab'y Services, Inc.*, No. 03 Civ. 2411, 2008 WL 4283348 (E.D.N.Y. Sept. 17, 2008) ............................................................................................18

*Lamot v. Gondek*, 163 A.D.2d 678 (3d Dep't 1990).....................................................19

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995)..........................................21

*Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996)...............................................................20

*LeTray v. City of Watertown*, No. 20 Civ. 1194 (FJS/TWD), 2024 WL 1107903 (N.D.N.Y. Feb. 22, 2024) ..............................................................................................2

*Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457 (S.D.N.Y. 2003)..........19

*Matteo v. New York State Div. of Hum. Rts.*, 306 A.D.2d 484 (2d Dept. 2003)............11

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) .......................................17

*Mileski v. Long Island R. Co.*, 499 F.2d 1169 (2d Cir. 1974).......................................19

*Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978)...........14, 15

*Morris v. Gordon*, No. 15 Civ. 5872, 2017 WL 10180424 (E.D.N.Y. Aug. 2, 2017)...................14

*Murphy v. Hughson*, 82 F.4th 177 (2d Cir. 2023)...........................................................................12

*Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35 (E.D.N.Y. 2009)......................................................18

*Outlaw v. City of Hartford*, 884 F.3d 351 (2d Cir. 2018)...............................................................15

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)................................................................14, 15

*People by Abrams v. Hamilton*, 125 A.D.2d 1000 (4th Dept. 1986)..............................................20

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256 (1979) ...............................................6

*Phillips v. Girdich*, 408 F.3d 124 (2d Cir. 2005) ............................................................................6

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002) ...............................................................................12

*Pyke v. Cuomo*, 258 F.3d 107 (2d Cir. 2001) .................................................................................6

*Quinby v. WestLB AG*, No. 04 Civ. 7406, 2008 WL 3826695 (S.D.N.Y. Aug. 15, 2008)...........18

*Rainone v. Potter*, 388 F. Supp. 2d 120 (E.D.N.Y. 2005) .............................................................18

*Regan v City of Geneva*, 136 A.D.3d 1423 (4th Dept. 2016) ..........................................................9

*Ruhlmann v. Ulster Cnty. Dep't of Soc. Services*, 194 F.R.D. 445 (N.D.N.Y. 2000) ..................18

*Sales v. Republic of Uganda*, 828 F. Supp. 1032 (S.D.N.Y. 1993) ...............................................17

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017)..........................................................................8

*Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033 (2d Cir. 1992).......................................19

*Sloley v. VanBramer*, 945 F.3d 30 (2d Cir. 2019) ........................................................................12

*Smith v. Wade*, 461 U.S. 30 (1983)...............................................................................................20

*Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536 (2d Cir. 2020)..........18

*Sulkowska v. City of New York*, 129 F. Supp. 2d 274 (S.D.N.Y. 2001) ........................................19

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)....................................................................16

*Union Free Sch. Dist. No. 6 of Towns of Islip & Smithtown v. New York State Hum. Rts.
     Appeal Bd.*, 35 N.Y.2d 371 (1974) .................................................................................9, 10

*United States v. City of New York*, 717 F.3d 72 (2d Cir. 2013)......................................................6

*United States v. Virginia*, 518 U.S. 515 (1996) .........................................................................7, 8

*Wang v. Vahldieck*, No. 09 Civ 3783, 2012 WL 119591 (E.D.N.Y. Jan. 9, 2012) ......................14

*Weber v. Dell*, 804 F.2d 796 (2d Cir. 1986) .................................................................15

*Wilson v. Phoenix House*, 42 Misc. 3d 677 (Sup. Ct. 2013) .........................................10

*Wray v. City of New York*, 490 F.3d 189 (2d Cir. 2007).................................................14

**Statutes, Rules and Regulations**

9 N.Y.C.R.R. § 466.13.......................................................................................11

CRL § 40-c(1) ...................................................................................................10

CRL § 40-c(2) ................................................................................................9, 10

CRL § 40-d ..................................................................................................19, 20

N.Y. Const. Article 1, § 11 ..................................................................................6

N.Y. Exec. Law § 296........................................................................................9

**Other Authorities**

N.Y. State Div. of Hum. Rts., *Guidance on Protections From GENDER IDENTITY DISCRIMINATION Under the New York State Human Rights Law* (Jan. 29, 2020), https://dhr.ny.gov/system/files/documents/2022/04/nysdhr-genda-guidance-2020.pdf....10

## PRELIMINARY STATEMENT

In this case, Plaintiff DeAnna LeTray challenges the discrimination and sexual abuse she suffered at the hands of City of Watertown and Jefferson County Defendants. Ms. LeTray is a transgender woman whom Watertown Police Department (WPD) police officers and Jefferson County Correctional Facility (JCCF) corrections officers misgendered, mocked because of her transgender identity, and subjected to an illegal body cavity strip search, sexual assault, and excessive force over the course of an arrest and short detention. City of Watertown and Jefferson County's deficient policies and practices—and their failure to train officers—regarding the treatment of transgender people directly led to the discriminatory treatment of Ms. LeTray. Ms. LeTray has endured pain and suffering because of Defendants' actions, which is ongoing, including a diagnosis of PTSD, loss of income, and other damages.

This treatment was prohibited by federal and state law. The testimony and evidence will establish that Defendants are liable to Ms. LeTray for violations of the federal and New York State equal protection clause, New York Civil Rights Law (CRL) section 40-c, , the Fourth Amendment's prohibition on unreasonable body cavity searches and excessive force, the Fourth and Fourteenth Amendments' prohibition on sexual assault, and the Fourteenth Amendment's prohibition on failure to intervene. The testimony will also establish municipal liability for the City of Watertown and Jefferson County for the individual defendants' actions, as well as claims for compensatory and punitive damages, including lost wages, and injunctive relief.

## PROCEDURAL HISTORY

Ms. LeTray's Second Amended Complaint contains eight claims: (1) Fourth Amendment unreasonable strip search against Defendants City of Watertown, Jefferson County, former Jefferson County Sheriff O'Neill, Kristopher M. Spencer, Watertown Police Chief Charles Donoghue, and Joel Dettmer; (2) Fourth and Fourteenth Amendment sexual assault against

Defendant Dettmer; (3) Fourth Amendment unreasonable body-cavity search against Defendant Dettmer; (4) Fourteenth Amendment failure to intervene against Defendants George Cummings, Patrick Larkins, and Deborah Davis; (5) Fourth Amendment excessive use of force against Defendants Cummings, Samuel White and Dettmer; (6) Fourteenth Amendment denial of equal protection against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Larkins, Davis and White; (7) denial of equal protection in violation of the New York State Constitution against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Larkins, Davis, and White; and (8) discrimination in violation of New York Civil Rights Law § 40-c against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Larkins, Davis, and White. Order Dated Feb. 22, 2024 ("SJ Order"), ECF 119, at 2.[1]

Defendants City of Watertown and Donoghue moved for summary judgment regarding Ms. LeTray's first, sixth, seventh and eighth causes of action. *Id.* The Court granted Defendants City of Watertown and Donoghue's motion for summary judgment with respect to the first cause of action—regarding Jefferson County Jail's strip search policy—but otherwise denied the motion, holding that a reasonable jury could find in favor of Ms. LeTray on her equal protection and statutory discrimination claims. *Id.* at 23. Ms. LeTray moved for summary judgment on her first cause of action; the Court denied her motion and held as a matter of law that Jefferson County's strip search policy does not violate the Fourth Amendment on its face. *Id.* at 2, 23. All other claims remain in the case and are before the Court and jury in this trial. *Id.* at 23.

---

[1] This Court's Summary Judgment Order also appears at *LeTray v. City of Watertown*, No. 20 Civ. 1194 (FJS/TWD), 2024 WL 1107903 (N.D.N.Y. Feb. 22, 2024).

## FACTUAL BACKGROUND

The following is adapted from this Court's summary of the factual background of this case. *See* SJ Order at 3–6.

**Plaintiff is a Transgender Woman**

Plaintiff DeAnna LeTray is a transgender woman. *Id.* at 3. Since 2010, Ms. LeTray has lived "in her affirmed female gender," wearing women's clothing and prosthetic breasts, putting on makeup, wearing a feminine wig, and going by the name "DeAnna*." Id.* Although she has used the name "DeAnna LeTray" publicly since 2010, she did not obtain a court-ordered name change until 2019. *Id.* Prior to 2019, her New York State driver's license listed her sex as male and displayed her deadname.[2] *Id.*

**Arrest**

On September 28, 2017, Ms. LeTray's gender identity and expression were that of a woman: "she wore makeup, a long red wig, boho pants, a crop top, prosthetic breasts, and carried a purse." *Id.* That night, she was involved in a domestic dispute that WPD Police Officers Cummings and White responded to at the residence of Joshua Coffey. *Id.* at 4. Ms. LeTray explained to the officers "that she was a transgender woman," and provided them with both "the name that appeared on her government-issued identification" and with her name, "DeAnna LeTray." *Id*. Despite doing this, "Officer Cummings called her a 'guy,' 'a man dressed like a woman,' a 'liar,' asked her 'how long have you dressed like that?,' and questioned her about her sexuality and genitalia." *See id.* After Ms. LeTray indicated that she would walk home, "Officer Cummings stated, 'you have serious mental problems—you are a guy dressed like a woman . . . we can't let you walk the streets looking and dressed like that.'" *Id.* Throughout her arrest, "the

---

[2] The term "deadname" refers to the name a transgender person was given at birth and no longer uses upon transitioning. *See* SJ Order at 3 n. 5.

officers referred to her by male pronouns and her deadname; mocked the way she dressed; and repeatedly called her 'a man dressed like a woman.'" *Id.* Officer Cummings arrested Ms. LeTray and Officer White "transported her to the Watertown police station for booking." *Id.*

**Booking**

"Officers ordered Plaintiff to remove her wig for her booking photograph, despite testifying that they were able to identify Plaintiff as the same person with her wig and without her wig and that they did not have any basis for believing that Plaintiff was trying to hide her identity." *Id.* at 4–5. Ms. LeTray considered her wig to be her hair, an essential part of her gender identity and expression, and did not want to be photographed without it on. *See id.* at 5. She therefore asked the officers to be permitted to "remove her makeup because she felt it would be humiliating to take the photo with makeup on but without her wig." *Id.* But the officers refused to let her do so and instructed her to go to an interview room, and on the way to the room, Ms. LeTray picked up her hairclip to put in her hair. *Id.* Officer Cummings claimed "that he ordered her to drop the hairclip, and she refused," though Ms. LeTray "denies that she was ordered to drop her hairclip" and "instead, she claims that, after she told Officer Cummings that she was holding a hairclip, he threw her to the ground and ripped her wig and part of her natural hair out of her head." *Id.* Ms. LeTray claims that "Officer Cummings then told her, 'you are going to go to the jail and get strip searched . . . we are going to show you that you are a man. You are going to love that.'" *Id.* Officers then transported Ms. LeTray to the Jefferson County Correctional Facility. *Id.*

**Jefferson County Correctional Facility**

The WPD brings certain arrestees to the Jefferson County Jail where the JCCF holds them until arraignment "at which time WPD transports the individual to court." *Id.* "The WPD

arrestees are held in holding cells alone, not in the jail's general population." *Id.* at 5–6. Jefferson County Correctional Facility policy required "all arrestees entering the jail to undergo a strip search and visual body-cavity search" and when she arrived at the JCCF, Ms. LeTray was "subjected to a strip search and visual body-cavity search." *Id.* at 6. Subsequent to this search, Defendant Dettmer informed Ms. LeTray he would subject her to a manual cavity search. Second Amended Complaint ("SAC") (Sept. 30, 2021), ECF 58, ¶¶ 42–45. Ms. LeTray requested that a female officer perform the search, but Defendant Dettmer told Ms. LeTray that she could not have a female officer perform the search. *Id.* ¶ 45. Defendant Dettmer then fondled Ms. LeTray's genitals and conducted a manual body cavity search by inserting his finger in her rectum while Defendants Cummings, Larkins, and Davis watched but failed to stop the search. *Id.* ¶¶ 44–49. During her incarceration at the JCCF, Defendants continued to refer to Ms. LeTray using male pronouns and her deadname. *Id.* ¶¶ 42, 45, 48. Ms. LeTray was brought to a holding cell at the JCCF where she broke down and started hysterically crying—she called out for her mother repeatedly and contemplated suicide. *Id.* ¶ 51. Ms. LeTray was held in the holding cell at the jail and arraigned the next morning. SJ Order at 6. WPD and Jefferson County records related to Ms. LeTray's arrest and booking document her as a male, use he/him pronouns, and refer to her by her deadname. *Id.*

## ARGUMENT

### I.   DEFENDANTS ARE LIABLE TO PLAINTIFF FOR FEDERAL AND NEW YORK STATE EQUAL PROTECTION VIOLATIONS.

"The Equal Protection Clause of the Fourteenth Amendment requires the State to treat all persons similarly situated alike, avoiding classifications that are arbitrary or irrational and those that reflect a bare . . . desire to harm a politically unpopular group." SJ Order at 13 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446–47 (1985) (quotation marks omitted)).

The New York State Equal Protection Clause "afford[s] coverage as broad as that provided by the Fourteenth Amendment to the United States Constitution." *Brown v. State*, 89 N.Y.2d 172, 190-91 (1996); *see also Hernandez v. Robles*, 855 N.E.2d 1, 9 (N.Y. 2006); SJ Order at 12 n. 13; N.Y. Const. Article 1, § 11 ("No person shall be denied the equal protection of the laws of this state or any subdivision thereof.") "To prove a violation of the Equal Protection Clause, a plaintiff must establish that (1) he or she was 'treated differently than others similarly situated' because of intentional or purposeful discrimination and (2) 'the disparity in treatment cannot survive the appropriate level of scrutiny.'" SJ Order at 13 (citing *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

**A.  Differential Treatment**

"To act with discriminatory purpose means to select[] or reaffirm[] a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." SJ Order at 14 (citing *United States v. City of New York*, 717 F.3d 72, 93–94 (2d Cir. 2013); *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)) (internal quotation marks omitted). "A plaintiff need not point to a specific comparator if a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus towards an identifiable group." SJ Order at 14 (citing *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001); *J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127, 130–31 (1994)) (internal quotation marks omitted). "[V]erbal abuse constitutes actionable differential treatment if accompanied by physical abuse or an appreciable psychological injury." SJ Order at 15 (citations omitted).

In this case, the testimony and evidence will show that Ms. LeTray was subjected to differential treatment in the form of derogatory comments, misgendering, misclassification as a "man," a cross-gender strip-search, and physical and sexual assault based on her gender identity, resulting in physical and psychological injury by Watertown and Jefferson County Defendants.

The testimony of Dr. Randi Ettner, Plaintiff's expert, will also establish that transgender people like Ms. LeTray are routinely singled out for the type of harmful differential treatment WPD and Jefferson County engaged in—against the weight of clear medical consensus and well-known best practices—and that such differential treatment can lead to severe psychological injury. The evidence will also establish that Chief Donoghue and Sheriff O'Neill's adoption and maintenance of discriminatory policies and practices directly resulted in the differential treatment of Ms. LeTray on the basis of her gender identity.

**B.  Heightened Scrutiny**

"[D]ifferential treatment based on sex triggers heightened scrutiny[.]" SJ Order at 16 (citing *United States v. Virginia*, 518 U.S. 515, 555 (1996)). In *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020), "the Supreme Court confirmed that discrimination based on transgender status constitutes sex discrimination[.]" SJ Order at 16. Additionally, "quasi-suspect classifications trigger heightened scrutiny . . . and—although the Supreme Court and the Second Circuit have not addressed the issue—the vast majority of courts to consider the question have concluded that transgender people constitute a quasi-suspect class." SJ Order at 16 (citing *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 140 (S.D.N.Y. 2015); *Hecox v. Little*, 79 F.4th 1009, 1026 (9th Cir. 2023), *withdrawn,* 99 F.4th 1127 (9th Cir. 2024); *Cleburne*, 473 U.S. at 440–41)).

Heightened scrutiny is "a 'demanding' standard that requires the government to demonstrate an 'exceedingly persuasive' justification for its differential treatment. . . . Specifically, the government must demonstrate 'that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives.' . . . 'The justification must be genuine,' and it may not 'rely on overbroad generalizations about the different talents, capacities, or preferences

of males and females.'" SJ Order at 17 (quoting *Virginia*, 518 U.S. at 533; and *Sessions v. Morales-Santana*, 582 U.S. 47, 63 n.13 (2017) (directing courts to "reject measures that classify unnecessarily and overbroadly by gender when more accurate and impartial lines can be drawn")).

Here, this Court held that Defendants' discriminatory conduct, practices, and policies are subject to heightened scrutiny because they "rest[] on sex-based classifications *and* because transgender people constitute at least a quasi-suspect class." *Grimm*, 972 F.3d at 607; *see also* SJ Order at 16. And if the jury finds that the Defendants engaged in differential treatment, they fail heightened scrutiny because, *first*, they have not attempted to justify the alleged discrimination and differential treatment under any level of scrutiny—let alone under heightened scrutiny's "demanding" burden. As to Watertown, this Court held that the Watertown defendants "do not entertain the possibility that Plaintiff was subjected to actionable differential treatment and proffer no discernable justifications" for any discriminatory treatment, SJ Order at 17–18—instead limiting their arguments to disputing whether discrimination occurred at all, *see id.* Similarly, the Jefferson County Defendants have asserted no interest in treating transgender women differentially by misgendering them, using male pronouns to refer to them, harassing them, subjecting them to strip searches by men, or physically and sexually assaulting them.

*Second*, even if the Defendants sought to articulate an "exceedingly persuasive justification" for their discrimination, none exists. *See Grimm*, 972 F.3d at 609–10 (finding defendants did not have an exceedingly persuasive justification for creating policies that discriminated against transgender people); *Adkins*, 143 F. Supp. 3d at 140–41 (same as to differential treatment by police); *Hecox*, 79 F.4th at 1033 (same outside of police context).

## II.      DEFENDANTS ARE LIABLE TO PLAINTIFF FOR VIOLATING NEW YORK CIVIL RIGHTS LAW SECTION 40-C.

New York Civil Rights Law section 40-c prohibits "any discrimination in [a person's] civil rights . . . by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state" based on certain protected categories, including "sex . . . gender identity or expression, or disability." Civil Rights Law section 40-d imposes a statutory penalty on "[a]ny person who shall violate" section 40-c *and* for any person "who shall aid or incite the violation" of section 40-c.

Facts that establish discrimination under the New York State Human Rights Law (NYSHRL) are sufficient to establish discrimination under the CRL section 40-c. *See Gordon v. PL Long Beach, LLC*, 74 A.D.3d 880, 885 (2d Dept. 2010) (holding "facts sufficient to sustain a cause of action under [the NYSHRL] will support a cause of action under Civil Rights Law § 40-c"); *Illiano v. Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 352–53 (E.D.N.Y. 2008).[3] New York

---

[3] Importantly, the CRL and the NYSHRL squarely *prohibit* discrimination on the basis of protected categories—they do not engage in a constitutional balancing test based on levels of scrutiny triggered by a finding of differential treatment. *See* CRL § 40-c(2) ("No person shall, because of . . . sex . . . gender identity or expression, or disability . . . be subjected to any discrimination in his or her civil rights, or to any harassment."); N.Y. Exec. Law § 296 ("It shall be unlawful discriminatory practice" to engage in enumerated forms of discrimination). While this analysis is similar to the first prong of the equal protection analysis—which asks whether differential treatment occurred—it does not trigger any balancing under the second prong of the equal protection analysis since the government cannot justify prohibited discrimination with "an exceedingly persuasive justification" or with any justification. The New York Court of Appeals has made this distinction between statutory and constitutional discrimination claims clear, holding that for a statutory claim "the test to be applied here is not the constitutional standard under the equal protection clause, but the statutory standard of the Human Rights Law." *Union Free Sch. Dist. No. 6 of Towns of Islip & Smithtown v. New York State Hum. Rts. Appeal Bd.*, 35 N.Y.2d 371, 377–78 (1974). This makes sense, since statutory antidiscrimination protections may extend beyond the Equal Protection Clause, and "what the Constitution does not forbid may nonetheless be proscribed by statute." *Id.*; *see also Regan v. City of Geneva*, 136 A.D.3d 1423, 1425 (4th Dept. 2016) (holding that HRL discrimination claim succeeded where equal protection claim failed).

courts have held that prohibited discriminatory treatment under the NYSHRL includes

classifying a transgender woman as man, *see Wilson v. Phoenix House*, 42 Misc. 3d 677 (Sup.

Ct. N.Y. Cnty. 2013) and refusing to update a transgender woman's City-issued records to reflect

her name, gender, and pronouns, *Doe v. City of New York*, 42 Misc. 3d 502, 507 (Sup. Ct. 2013).

In addition to the plain statutory text and case law, guidance from the New York State

Division of Human Rights, the state agency tasked with interpreting and enforcing state

antidiscrimination law, offers a persuasive articulation of what constitutes prohibited

discrimination under the statute. "Gender identity discrimination occurs when a person is

subjected to inferior treatment because of their gender identity or expression." N.Y. State Div. of

Hum. Rts., *Guidance on Protections From GENDER IDENTITY DISCRIMINATION Under the*

*New York State Human Rights Law* (Jan. 29, 2020) at 6,

https://dhr.ny.gov/system/files/documents/2022/04/nysdhr-genda-guidance-2020.pdf ("DHR

Guidance"). Discrimination based on gender identity or expression includes engaging in

"harassment, such as by making humiliating, abusive or threatening remarks, name-calling,

---

The Plaintiff notes that this Court previously held that, on issues relevant to summary judgment,
it "analyze[d] Plaintiff's NYCRL § 40-c claim using the same framework [as the equal
protection claim] because the statute entitles individuals to 'the equal protection of the laws of
this state or any subdivision thereof.'" SJ Order at 12 n. 13 (quoting CRL § 40-c(1), and citing
*Aurecchione v. New York State Div. of Hum. Rts.*, 98 N.Y.2d 21, 25–26 (2002)). The Plaintiff
respectfully submits that, since CRL section 40-c(2) includes text that goes beyond the general
"equal protection of the laws" provisions of section 40-c(1) and explicitly prohibits
discrimination or harassment on the basis of enumerated protected categories—and since the
New York Court of Appeals has squarely held that this distinction must result in a slightly
different analysis that takes into account the more expansive statutory text, *see Union Free Sch.*
*Dist. No. 6*, 35 N.Y.2d. at 377–78—her CLR claims should not be conflated with her equal
protection claims in all respects. *Aurecchione*, which does not consider constitutional claims and
instead notes that federal Title VII jurisprudence is relevant to the NYSHRL analysis in areas
where the statutes "are textually similar and ultimately employ the same standards of recovery,"
98 N.Y.2d at 26, does not counsel otherwise.

inappropriate physical contact, or any other harassing contact," and "refusing to use an individual's name or pronouns." *Id.* at 3, 10–11.[4]

Here, the same facts that establish differential treatment of Ms. LeTray in the equal protection context also establish a CRL section 40-c violation. When Defendants subjected Ms. LeTray to derogatory comments, misgendering, misclassification as a "man," a cross-gender strip search, and physical and sexual assault based on her gender identity, they engaged in "discrimination" of her "civil rights" based on her "sex . . . gender identity or expression, or disability."[5] Such "harassment, such as by making humiliating, abusive or threatening remarks, name-calling, inappropriate physical contact, or any other harassing contact," and "refusing to use" her "name or pronouns," establishes discrimination.

## III. DEFENDANT DETTMER IS LIABLE TO PLAINTIFF FOR AN UNREASONABLE MANUAL BODY CAVITY SEARCH.

A court must consider four factors in determining whether a search was reasonable under the Fourth Amendment: (1) the scope of the intrusion; (2) the way the search is conducted; (3) the justification for commencing the search; and (4) the place search is conducted. *Harris v. Miller,* 818 F.3d 49, 57 (2d Cir. 2016). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd,*

---

[4] For New York laws, the "construction and interpretation of an administrative agency of the statute under which it functions . . . are entitled to the greatest weight by the courts," *Coffey v. Joy*, 91 A.D.2d 923, 924 (1st Dept. 1983), *aff'd,* 59 N.Y.2d 643 (1983), and, for the Division of Human Rights specifically, its opinions regarding discriminatory conduct are entitled to particular "deference due to its expertise in evaluating discrimination claims," *Matteo v. New York State Div. of Hum. Rts.*, 306 A.D.2d 484, 485 (2d Dept. 2003).

[5] New York State regulations have codified the principle, established under longstanding case law in New York, that discrimination on the basis of gender identity is a prohibited form of "sex discrimination," and that discrimination on the basis of actual or perceived gender dysphoria is a prohibited form of "disability discrimination." 9 N.Y.C.R.R. § 466.13.

461 F. App'x 18 (2d Cir. 2012) (summary order). A search that is performed in contravention of a jail's policies and not supported by reasonable suspicion is unconstitutional. *Murphy v. Hughson*, 82 F.4th 177, 186 (2d Cir. 2023).

Here, the evidence will establish Defendant Dettmer made no inquiry into whether there was reasonable suspicion to perform a manual body cavity search on Ms. LeTray. Even if he had made such an inquiry, according to his own testimony there was nothing from Ms. LeTray's behavior that would have led him to believe she was hiding a weapon or contraband in her body cavities. *See also Sloley v. VanBramer*, 945 F.3d 30, 39 (2d Cir. 2019) (holding body cavity searches "must be based on reasonable suspicion to believe that the arrestee is secreting evidence inside the body cavity to be searched"). Additionally, the Jail's own policies forbid a corrections officer from performing a manual body cavity search. By performing a manual body cavity search on Ms. LeTray without at minimum reasonable suspicion—and in disregard of Jefferson County's own policies—Defendant Dettmer violated Ms. LeTray's Fourth Amendment rights.

## IV.   DEFENDANT DETTMER IS LIABLE TO PLAINTIFF FOR SEXUAL ASSAULT.

Sexual misconduct by law enforcement personnel on an arrestee is analyzed under the Fourth Amendment. *See Poe v. Leonard*, 282 F.3d 123, 136–37 (2d Cir. 2002). Assessing the constitutionality of the actions of law enforcement during a seizure involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "No governmental interest is served by a state actor sexually assaulting anyone." *Hess v. Garcia*, 72 F.4th 753, 764 (7th Cir. 2023); *see also Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("[A] search may not be undertaken. . . for the purposes of sexually abusing an inmate."). For a sexual assault claim, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it

is undertaken to arouse or gratify the officer or humiliate [the individual.]" *Crawford*, 796 F.3d at 257–58. Here, the testimony and evidence will show that Defendant Dettmer's actions served no legitimate penological interest and were for the sole purpose of humiliating Ms. LeTray.

## V.   DEFENDANTS CUMMINGS, LARKINS, AND DAVIS ARE LIABLE TO PLAINTIFF FOR FAILURE TO INTERVENE.

After establishing a constitutional violation, to then succeed on a derivative failure-to-intervene claim, a plaintiff must prove that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008), *aff'd sub. nom.*, 461 F. App'x 18 (2d Cir. 2012) (summary order). Here, the evidence will show that while Ms. LeTray was illegally searched, discriminated against, and sexually assaulted as detailed *supra*, Defendants Cummings, Larkins and Davis were present, and had the opportunity to intervene but failed to do anything to stop the abuse.

## VI.   DEFENDANTS CUMMINGS, WHITE, AND DETTMER ARE LIABLE TO PLAINTIFF FOR EXCESSIVE FORCE.

"To establish a section 1983 claim for excessive force, a plaintiff has the burden of showing that, under the Fourth Amendment, the use of force was objectively unreasonable in light of the facts and circumstances confronting the officers, without regard to the officers' underlying intent or motivation." *Burke v. Cicero Police Dep't*, No. 07 Civ. 624 (FJS/DEP), 2011 WL 1232107, at \*5 (N.D.N.Y. Mar. 30, 2011) (Scullin, J.) (citing *Anderson v. Branen,* 17 F.3d 552, 559–60 (2d Cir. 1994)). Courts look at the following factors: "[1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm." *Morris*

*v. Gordon*, No. 15 Civ. 5872, 2017 WL 10180424, at *7 (E.D.N.Y. Aug. 2, 2017) (citing

*Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016)).

Here, the testimony and evidence will show that while detained at the police station, Ms.

LeTray was given permission to fix her hair. As she reached for her hairclip, Defendants White

and Cummings threw her to the ground. While on the ground, Defendant Cummings pulled the

wig off Ms. LeTray's head with such force that it caused some of her natural hair to be ripped

out of her head. *See Wang v. Vahldieck*, No. 09 Civ. 3783, 2012 WL 119591, at *7 (E.D.N.Y.

Jan. 9, 2012) (holding that a reasonable jury could find dragging a person by their hair when they

were not resisting arrest is excessive force.) As to Defendant Dettmer, the same facts that

establish Ms. LeTray's body cavity search and sexual assault claims also establish that he used

excessive force.

## VII.   DEFENDANTS CITY OF WATERTOWN AND JEFFERSON COUNTY ARE SUBJECT TO MONELL LIABILITY.

When municipal employees commit constitutional violations, a "municipality is liable

under § 1983 if its policy causes [the] constitutional injury." SJ Order at 18 (citing *Monell v.*

*Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691–94 (1978)); *see also Wray v. City*

*of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (holding that, to establish municipal liability, a

plaintiff can demonstrate: "(1) an official policy or custom that (2) causes the plaintiff to be

subjected to (3) a denial of a constitutional right"). A "policy" can be established in several

ways, two of which are relevant to Ms. LeTray's case.

First, if an "'official[] with policymaking authority,'" SJ Order at 18 (quoting *Amnesty*

*Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004))—meaning someone who

"possesses final authority to establish municipal policy with respect to the action ordered," SJ

Order at 18–19 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986))—creates

"formal rules or *understandings* . . . that are intended to, and do, establish fixed plans of action," *Pembaur*, 475 U.S. at 480, that "constitutes municipal policy," SJ Order at 18–19. The "highest ranking law enforcement official" in an agency is a policymaker for *Monell* purposes. *Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986).

Second, a municipality's failure to train its employees "may serve as the basis for § 1983 liability . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (in addition to a formal official policy, failure to train can establish an official policy or custom when it shows deliberate indifference). Deliberate indifference exists where the "unconstitutional consequences of failing to train were patently obvious." *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011).

Once a plaintiff demonstrates an official policy or custom, to establish causation they must show that the policy or custom—or failure to train—was the "'moving force [behind] the constitutional violation.'" SJ Order at 19 (quoting *City of Canton*, 489 U.S. at 389)). In other words, section 1983 "employs the tort principle of proximate causation." SJ Order at 19 (quoting *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007)).

Here, where the testimony will establish "that all sex-specific policies are interpreted as to treat transgender women as males, without regard to gender identity," SJ Order at 19, where Chief Donoghue's interpretation "constitutes municipal policy because he has final authority to establish . . . Watertown's policing policies," *id.*, and where "City of Watertown police officers received no guidance about the appropriate treatment of transgender individuals . . . and Defendant Cummings admitted to not knowing what a transgender person was in 2017," *id.*, Ms. LeTray can establish each element of *Monell* liability. Specifically, that "Defendant City of

Watertown's sex-specific policing policies—created by Defendant Chief Donoghue—led officers to categorically equate transgender women with men, disregarding gender identity, and causing the officers' verbal abuse, removal of Plaintiff's wig, and alleged physical assault while removing the wig." *Id.*

With respect to Jefferson County, at the time of Ms. LeTray's arrest—other than a cursory mention of transgender people in their search policies—Jefferson County had no other written policies that covered the treatment of transgender people and provided no trainings for staff on the treatment of transgender individuals. The evidence at trial will show that it is certain Sheriff's Office staff encounter people who identify as transgender. Despite that certainty, the County failed to implement any policies—or provide any trainings to staff—to address the specific needs of transgender people in their custody. As a direct result of the County's failure to train their staff, Ms. LeTray was discriminated against because of her gender identity as set forth in detail *supra.* Additionally, the County's actual policy and practice in place at the time of Ms. LeTray's arrest was that the gender of an officer that performs a strip search is determined by the genitals of the prisoner, requiring a transgender woman like Ms. LeTray to be treated as a man and searched by a male officer.

## VIII.  DEFENDANTS DONOGHUE, O'NEILL, AND SPENCER ARE PERSONALLY LIABLE.

A "municipal official is personally liable under 42 U.S.C. § 1983 if the 'official's own individual actions' cause an injury to the plaintiff's constitutional rights." SJ Order at 18 (quoting *Tangreti v. Bachmann,* 983 F.3d 609, 616–18 (2d Cir. 2020)). Accordingly, a direct constitutional violation exists, *inter alia*, when the official personally approved a policy or practice that is the source of the constitutional violation or was personally involved in its creation. *See, e.g.*, *In re New York City Policing During Summer 2020 Demonstrations*, 548 F.

16

Supp. 3d 383, 410 (S.D.N.Y. 2021) (holding that a direct violation was pled when a police chief "personally approved" the challenged tactic, when a mayor "was personally involved in the development of the [challenged] tactics," and when he "personally approved the strategies" challenged by the plaintiffs).

Here, for all the same reasons "Watertown's sex-specific policing policies—created by Defendant Chief Donoghue—led officers to" violate Ms. LeTray's equal protection rights, SJ Order at 19, Defendant Chief Donoghue is personally liable. Similarly, for all the same reasons Jefferson County's sex-specific jail policies—created by Sheriff O'Neill and Jail Administrator Spencer—led Defendant Dettmer to violate Ms. LeTray's equal protection rights, they are also personally liable.

## IX.   DEFENDANTS ARE LIABLE TO PLAINTIFF FOR DAMAGES.

### A.   Compensatory Damages

In civil rights cases, "compensatory money damages are properly awarded for civil rights violations when the plaintiff has suffered an actual loss as a result of a constitutional deprivation." *Burke*, 2011 WL 1232107, at *5 (Scullin, J.) (citing *Henry v. Gross,* 803 F.2d 757, 768 (2d Cir. 1986)). Damages for Section 1983 cases are "ordinarily determined according to principles derived from the common law of torts," and serve the same primary goal of compensation. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–11 (1986); *Bermudez v. City of New York*, No. 11 Civ. 750, 2014 WL 11274759, at *6 (S.D.N.Y. Mar. 25, 2014).

Compensatory damages in Section 1983 cases include pain and suffering and lost earnings. *See Memphis Cmty. Sch. Dist.,* 477 U.S. at 301, 307. Pain and suffering damages include compensation for physical pain. *Sales v. Republic of Uganda*, 828 F. Supp. 1032, 1044 (S.D.N.Y. 1993). And while de minimis physical pain, such as pain from being handcuffed, will

17

not warrant compensation, more egregious assaults warrant pain and suffering damages when the pain is a direct result of the excessive force. *Haywood v. Koehler,* 78 F.3d 101, 105 n. 2 (2d Cir. 1996) ("If . . . a handcuffed prisoner [ ] was assaulted in a cell . . . such an assault would necessarily warrant some compensatory damages, at least for pain and suffering, even if no lacerations or other observable injuries resulted.").

Compensatory damages also include emotional distress. The Second Circuit recognizes three main categories of emotional distress damages: garden-variety, significant, and egregious. *Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 546 (2d Cir. 2020) (summary order); *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (applying this damages categorization in the 1983 context). Significant emotional distress claims are based on more substantial harm and more offensive conduct than "garden variety" claims and are typically supported by medical testimony and evidence. *Olsen*, 615 F. Supp. 2d at 46 (quoting *Khan v. Hip Centralized Lab'y Services, Inc.,* No. 03 Civ. 2411, 2008 WL 4283348, at *11 (E.D.N.Y. Sept. 17, 2008)). Claims of emotional distress which rise above the garden variety level can include claims which "result[ ] in a specific psychiatric disorder." *Jessamy v. Ehren,* 153 F. Supp. 2d 398, 401 (S.D.N.Y. 2001) (quoting *Ruhlmann v. Ulster Cnty. Dep't of Soc. Services*, 194 F.R.D. 445, 449 n. 6 (N.D.N.Y. 2000)). Finally, egregious emotional distress claims either involve "outrageous or shocking" conduct or significant and lasting detrimental impacts on the plaintiff's health. *Olsen*, 615 F. Supp. 2d at 46 (quoting *Khan,* 2008 WL 4283348, at *12). Larger damage awards are appropriate in significant or egregious cases, where there is typically evidence of "debilitating and permanent alterations in lifestyle." *Quinby v. WestLB AG*, No. 04 Civ. 7406, 2008 WL 3826695, at *3 (S.D.N.Y. Aug. 15, 2008) (citing *Rainone v. Potter*, 388 F. Supp. 2d 120, 125 (E.D.N.Y. 2005)). "The measure of damages for pain and suffering or

emotional distress is the fair and reasonable compensation to be fixed by the trier of fact in the light of all the evidence in the case." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 308 (S.D.N.Y. 2001) (citing *Mileski v. Long Island R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974)).

Compensatory damages also include lost wages and future earnings. In New York, compensatory damages from lost earnings can be calculated based on the gross earnings of the Plaintiff prior to the time of injury. *See Marcoux v. Farm Serv. & Supplies, Inc.,* 290 F. Supp. 2d 457, 481 (S.D.N.Y. 2003) ("Lost earnings . . . must be established with reasonable certainty focusing on a plaintiff's earning abilities both before and after the accident.") (quoting *Lamot v. Gondek,* 163 A.D.2d 678, 680 (3d Dep't 1990)). There is no precise calculation required for calculating lost past or future earnings, but a Plaintiff "must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages," and while the Plaintiff "need not prove the amount of loss with mathematical precision . . . the jury is not allowed to base its award on speculation or guesswork." *Jeanty v. City of New York*, No. 18 Civ. 5920, 2021 WL 276553, at *3 (S.D.N.Y. Jan. 27, 2021) (quoting *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992)); *see also Marcoux*, 290 F. Supp. 2d at 481 ("Proof of such economic losses with 'reasonable certainty' requires the submission of documentary as well as testimonial evidence." (citations omitted)).

In this case, as a result of Defendants' unlawful actions, Ms. LeTray suffered physical injuries as well as ongoing pain and suffering, including a diagnosis of PTSD, depression, anxiety, and panic attacks. These injuries have caused her inability to work, which has also resulted in years of lost wages and future earnings.

## B.  Statutory Penalties Under Civil Rights Law Sections 40-c, 40-d.

The New York State Civil Rights Law independently entitles a person who was discriminated against in violation of section 40-c to statutory money damages against any person

who engaged in such discrimination *or* who aided or incited such discrimination. CRL §§ 40-c,

40-d; *see also Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 590

N.E.2d 228, 232 (1992) ("[T]he Civil Rights Law establishes a private cause of action to recover

a statutory penalty against those who violate these rights or who aid or incite such a violation.");

*People by Abrams v. Hamilton*, 125 A.D.2d 1000, 1002 (4th Dept. 1986) (affirming "penalties on

behalf of individual victims" of discrimination "in accord with Civil Rights Law § 40–d"). The

statutory penalty is set at no less than $100 and no more than $500 for each violation. CRL § 40-

d. Here, for each instance of unlawful discrimination—and for each instance of aiding or inciting

discrimination—Ms. LeTray is entitled to an amount no less than $100 and no more than $500.

## C.  Exemplary or Punitive Damages

Juries have wide discretion to award punitive damages against individual defendants

when a defendant's conduct "is shown to be motivated by evil motive or intent, or when it

involves reckless or callous indifference to the federally protected rights of others." *Lee v.

Edwards,* 101 F.3d 805, 808 (2d Cir. 1996) (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). In

this case, the jury may in its discretion choose to award Ms. LeTray punitive damages against the

individual Defendants if it finds that their repeated instances of discrimination in the form of

harassment and misgendering—as well as their use of force, a cross-gender search, sexual

assault, and use of an unlawful body cavity search—were "motivated by evil motive or intent,"

or "involve[d] reckless or callous indifference to the federally protected rights of" Ms. LeTray.

## X.     DEFENDANTS ARE LIABLE TO PLAINTIFF FOR INJUNCTIVE RELIEF.

As the Court held, if the jury finds Defendants are liable to Ms. LeTray for the alleged

constitutional violations, Ms. LeTray would have standing to seek injunctive relief in the form of

an order "to identify records related to her arrest and to '[c]orrect those records to properly

identify [Plaintiff] as a woman, not a man,' and to '[d]elete the booking photo depicting

[Plaintiff] without her hairpiece from its records, destroy any hard copies of the photo, and cease providing public access to the photo.'" SJ Order at 20.

If the jury finds in favor of Ms. LeTray on her constitutional or statutory claims, at that point the Court can consider the appropriateness of her claims for equitable relief. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 432 (2d Cir. 1995) (noting that "the general rule is that the jury must be allowed to decide the legal claims prior to the court's determination of the equitable claims," since at that point "principles of collateral estoppel prevent the judge from making findings of fact contrary to those of the jury" in deciding the equitable claims).

## ANTICIPATED EVIDENTIARY ISSUES

Plaintiff refers this Court to Plaintiff's *Omnibus* Motion *in Limine*, Motion *in Limine* to Exclude Irrelevant and Prejudicial Sexual Evidence, and Motion to Exclude the Expert Testimony of Dr. Gagandeep Jattana, submitted separately on today's date and incorporated here by reference.

## CONCLUSION

For the foregoing reasons, the testimony and evidence will establish that Ms. LeTray is entitled to compensatory and punitive damages she suffered because of Defendants' unlawful actions under the Fourth and Fourteenth Amendments to the United States Constitution, Article 1 Section 11 of the New York State Constitution, and Civil Rights Law section 40-c.

Dated: June 10, 2024
      New York, New York

Respectfully submitted,

*/s/ Jessica Perry*
Jessica Perry (702461)
Robert Hodgson (518648)
Veronica Salama (703812)
Molly K. Biklen (515729)
NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
E-mail: jperry@nyclu.org
      rhodgson@nyclu.org
      vsalama@nyclu.org
      mbiklen@nyclu.org

*/s/ Joshua Cotter*
Joshua Cotter (518217)
Samuel C. Young (508916)
LEGAL SERVICES OF CENTRAL NEW
    YORK, INC.
221 South Warren Street, 3rd Floor
Syracuse, New York 13202
Tel: (315) 703-6500
Fax: (315) 703-6520
E-mail: jcotter@lscny.org
      samyoung@lscny.org

*Attorneys for Plaintiff*