UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DEANNA LETRAY,

                    Plaintiff,

          v.

JEFFERSON COUNTY; CITY OF
WATERTOWN; COLLEEN O'NEILL, Jefferson          20-CV-1194 (FJS)(TWD)
County Sheriff; KRISTOPHER M. SPENCER;
JOEL DETTMER; CHARLES DONOGHUE, City
of Watertown Police Chief; GEORGE
CUMMINGS; SAMUEL WHITE; DEBORAH
DAVIS and PATRICK LARKINS,

                    Defendants.

## PROPOSED JURY INSTRUCTIONS

Pursuant to this Court's Final Pretrial Scheduling Order, ECF 122, the plaintiff submits

proposed jury instructions that are specific to the law in this case and any unusual issues. Where

appropriate, the plaintiff cites to the model instruction or case law from which the instruction

was adapted, or to the portion of this Court's previous decision that stated the relevant law.

**Duty of Jurors**

[Standard instruction regarding the duty of jurors, the duty to apply the law as the Court gives it, and the duty to decide the case solely on the evidence before the jury.] Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, gender, gender identity, or sexual orientation.[1]

---

[1] Ninth Circuit, *Model Jury Instructions* 3.1; *see also Peña-Rodriguez v. Colorado*, 580 U.S. 206, 228- (2017); *Franco v. Gunsalus*, No. 16-cv-634 (Scullin, J.), ECF 168 (Jury Instructions) at 2.

## Police Witnesses[2]

In this case you have heard testimony from a number of police officers. The testimony of a witness should not be believed solely and simply because the witness is a police officer. At the same time, a witness's testimony should not be disbelieved solely and simply because the witness is a police officer. You must evaluate a police officer's testimony in the same way you would evaluate the testimony of any other witness.

---

[2] New York Courts Final Jury Instructions, Credibility of Witnesses, *available online at* https://www.nycourts.gov/judges/cji/5-SampleCharges/CJI2d.Final_Instructions.pdf; *see also Franco v. Gunsalus*, No. 16-cv-634 (Scullin, J.), ECF 168 (Jury Instructions) at 7-8.

## Expert Testimony[3]

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses give their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions. You should weigh and evaluate the testimony of expert witness precisely as you weigh the testimony of any other witness.

In this case, the expert witness claimed special qualifications in issues related to gender identity, the treatment of gender dysphoria, and trauma. The expert who testified in this case did so in order to assist you in reaching an independent decision concerning the matters about which she testified.

The way you consider this opinion testimony is the same as how you consider the testimony of fact witnesses. In addition to all of the considerations that apply to ordinary witnesses whose credibility you must determine, you may also consider an expert's background, training and qualifications; the reasons for their opinions and the reliability of the information supporting those opinions.

You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, permit an expert's testimony to be a substitute for your own reason, judgment, or common sense. You may reject the testimony of an expert in whole or in part, if you conclude that the reasons given in support of an opinion are

---

[3] Modified from *Federal Jury Practice* § 104:40 and *Modern Federal Jury Instructions* § 76-10; *see also* Third Cir. Gen. Instr. § 2.11.

unsound or if, for other reasons, you do not believe the expert witness. The determination of the facts in this case rests solely with you.

### **Multiple Defendants[4]**

There is more than one defendant in this action. It does not follow from that fact alone that if one defendant is liable to the plaintiff, all defendants are liable; likewise, one defendant may be liable even when another defendant is not. Each defendant is entitled to a fair consideration of the evidence. Unless otherwise stated, all instructions I give you govern the case as to each defendant.

---

[4] 3 Fed. Jury Prac. & Instr. § 103:14 (6th ed.).

## <u>New York State Civil Rights Law § 40-c Discrimination Claim[5]</u>

Ms. LeTray has brought a claim against the defendants under New York State Civil

Rights Law section 40-c arguing that they discriminated against her based on her transgender

status. Civil Rights Law section 40-c states that:

> No person shall, because of race, creed, color, national origin, sex, marital status,
> sexual orientation, gender identity or expression, or disability . . . be subjected to
> any discrimination in his or her civil rights, or to any harassment . . . in the
> exercise thereof, by any other person or by any firm, corporation or institution, or
> by the state or any agency or subdivision of the state.

Discrimination exists when a transgender person is treated differently than other similarly

situated people who are not transgender, when they are treated differently because of animus

towards their transgender status, or when they are subjected to inferior treatment because of their

transgender status. Discrimination also includes classifying a transgender woman as man and

refusing to update a transgender woman's government records to reflect her correct gender and

pronouns.  Harassment includes making humiliating, abusive or threatening remarks, name-

calling, inappropriate physical contact, any other harassing contact, and refusing to use an

individual's preferred name or pronouns.

Here, Ms. LeTray argues that she was discriminated against and harassed when

Defendants called her a man after she told them she was a transgender woman; when they

mocked her gender identity; when they recorded her as "male" in all official paperwork; when

they forced her to remove her wig for her mugshot even though other women with synthetic hair

were permitted to have it on during a mugshot; when they physically assaulted her while ripping

---

[5] N.Y. Civ. Rights L. § 40-c; *see also Wilson v. Phoenix House*, 42 Misc. 3d 677 (Sup. Ct. 2013) (discrimination
includes classifying a transgender woman as a man); *Doe v. City of New York*, 42 Misc. 3d 502, 507 (Sup. Ct., 2013)
(discrimination includes refusing to update a transgender woman's government records to reflect her correct gender
and pronouns); New York State Division of Human Rights, *Guidance on Protections From GENDER IDENTITY
DISCRIMINATION Under the New York State Human Rights Law*, 6 (Jan. 29, 2020),
https://dhr.ny.gov/system/files/documents/2022/04/nysdhr-genda-guidance-2020.pdf; S.J. Op. at 12-16.

off her wig; and when they assigned a male officer to strip search her despite her request to be searched by a woman as other women are.

## Civil Actions Under 42 U.S.C. § 1983[6]

The rest of Ms. LeTray's claims in this case are brought under the federal civil rights law, 42 U.S.C. § 1983, which provides a remedy for people who have been deprived of their constitutional rights under color of state law. Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 creates a form of liability when people have been deprived of rights, privileges and immunities secured to them by the United States Constitution and federal statutes.

---

[6]John S. Siffert et al., *Modern Federal Jury Instructions, Civil*, Forms 87-65, 87-66, Matthew Bender & Company, Inc. (1993) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)).

### Elements of a Section 1983 Claim[7]

To establish a claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

1. that the conduct complained of was committed by a person acting under color of state law;

2. that this conduct deprived Ms. LeTray of a secured by the Constitution or laws of the United States; and

3. that the defendants' acts were the proximate cause of the injuries and consequent damages sustained by Ms. LeTray.

I will now explain each of the three elements in greater detail.

---

[7] John S. Siffert et al., *Modern Federal Jury Instructions, Civil*, Form 87-68, Matthew Bender & Company, Inc. (1993) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981); *Eagleston v. Guido*, 41 F.3d 865 (2nd Cir. 1994)); *Franco v. Gunsalus*, No. 16-cv-634 (Scullin, J.), ECF 168 (Jury Instructions) at 10-11.

**Section 1983 Claims: First Element—Action Under Color of State Law[8]**

The first element of the plaintiff's section 1983 claims is that the defendants acted under color of state law. This element is not at issue because there is no dispute that the defendants were all acting under color of state law. Therefore, I instruct you that the first statutory requirement is satisfied.

---

[8] John S. Siffert et al., *Modern Federal Jury Instructions, Civil*, Form 87-60, Matthew Bender & Company, Inc. (1993) (citing *Am. Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)).

**Section 1983 Claims: Second Element—Deprivation of Right[9]**

The second element of Ms. LeTray's section 1983 claims is that she was deprived of a federal right by the Individual or Municipal Defendants. Here, Ms. LeTray brings five different section 1983 claims based on the deprivation of four different rights:

1. Her right under the Fourteenth Amendment to be free from discrimination that violates the Equal Protection Clause. Specifically, she alleges that Defendants Cummings, White, Dettmer, Donoghue, O'Neill, and Spencer discriminated against her because she is transgender.

2. Her right under the Fourth Amendment to be free from an unreasonable manual body cavity search. Specifically, she alleges that while she was in the custody of the Jefferson County Sheriff, Defendant Dettmer subjected her to an unreasonable manual body cavity search by inserting his finger into her rectum without reasonable suspicion.

3. Her right under the Fourth and Fourteenth Amendments to be free from sexual assault. Specifically, she alleges that while she was in the custody of the Jefferson County Sheriff, Defendant Dettmer sexually assaulted her by inserting his finger into her rectum and touching her genitals.

4. The failure of certain defendants to intervene to protect her from the violations described above. Specifically, she alleges that Defendants Cummings, Larkins, and Davis failed to intervene when Defendant Dettmer was violating her rights at the Jefferson County Jail.

5. Her right under the Fourth Amendment to be free from an excessive use of force.

---

[9] John S. Siffert et al., *Modern Federal Jury Instructions, Civil*, Form 87-74[3], Matthew Bender & Company, Inc. (1993) (citing *Conn v. Gabbert*, 526 U.S. 286 (1999)).

Specifically, she alleges that during her time in the custody of the Watertown Police Department, Defendants Cummings and White used excessive force on her, and that during her time in the custody of the Jefferson County Sheriff, Defendant Dettmer used excessive force on her.

I will explain each of these claims more specifically below.

## <u>Section 1983 Claim 1: Fourteenth Amendment—EQUAL PROTECTION CLAUSE CLAIM</u>

Ms. LeTray claims that Defendants violated her right to equal protection under the law by discriminating against her based on her transgender status. The Equal Protection Clause of the United States Constitution prohibits government actors from discriminating on the basis of gender identity unless they have "an exceedingly persuasive justification."

Discrimination exists when a transgender person is treated differently than other similarly situated people who are not transgender, or when they are treated differently because of animus towards their transgender status. Here, if you find that any of the defendants discriminated against Ms. LeTray as described above, I instruct you that Defendants did not have an "exceedingly persuasive justification" for that discrimination.[10]

---

[10] S.J. Op. at 12-16; *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127, 130-31 (1994); *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001); *United States v. Virginia*, 518 U.S. 515, 555 (1996); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020).

## Section 1983 Claim 2: Fourth Amendment—UNREASONABLE MANUAL BODY CAVITY SEARCH

Ms. LeTray claims that Defendant Dettmer violated her rights by subjecting her to an unreasonable manual body cavity search. The Fourth Amendment of the United States Constitution prohibits corrections officers from engaging in an unreasonable search. A search is unreasonable if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish a person.

When determining whether a search is unreasonable, you may consider: (1) the scope of the intrusion; (2) the way the search was conducted; (3) the justification for commencing the search; and (4) the place the search was conducted. In order to justify a body cavity search, an officer must have reasonable suspicion to believe that the person being searched is secreting evidence inside of the body cavity to be searched. In addition, if a search is performed in violation of a jail's own policies and is not based on reasonable suspicion, it is unreasonable.

Here, Ms. LeTray argues that Defendant Dettmer conducted an unreasonable manual body cavity search in contravention of Jefferson County policy and without reasonable suspicion.[11]

---

[11] *Harris v. Miller,* 818 F.3d 49, 57 (2d Cir. 2016); *Jean-Laurent v. Wilkinson*, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008), *aff'd sub. nom.*, 461 F. App'x 18 (2d Cir. 2012) (summary order); *Murphy v. Hughson*, 82 F.4th 177, 186 (2d Cir 2023); *Sloley v. VanBramer*, 945 F.3d 30, 39 (2d Cir. 2019).

**<u>Section 1983 Claim 3: Fourth and Fourteenth Amendment—SEXUAL ASSAULT</u>**

Ms. LeTray claims that Defendant Dettmer violated her rights by subjecting her to sexual assault. The Fourth and Fourteenth Amendments of the United States Constitution prohibit corrections officers from sexually assaulting a person in their custody. In determining whether conduct constituted sexual assault, you should consider whether the contact was incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it was undertaken to arouse or gratify the officer or humiliate the person in custody.

Here, Ms. LeTray argues that Defendant Dettmer sexually assaulted her when he intentionally touched her genitals and buttocks, and inserted his finger in her rectum, for no valid purpose.[12]

---

[12] *Poe v. Leonard*, 282 F.3d 123, 136–37 (2d Cir. 2002); *Graham v. Connor*, 490 U.S. 386, 396, (1989); *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015).

## Section 1983 Claim 4: FAILURE TO INTERVENE

As we have just discussed, Ms. LeTray contends that Defendant Dettmer violated her right to be free from discrimination, from unreasonable searches, and from sexual assault during her time at the Jefferson County Correctional Facility. I have just explained the elements of those claim. Ms. LeTray also contends that Defendants Cummings, Larkins, and Davis should be liable for those violations because they failed to stop them from happening.

I instruct you that officers have a duty to intervene to protect people in jail custody from other officers who violate a person's rights. You should only consider whether Defendants Cummings, Larkin or Davis failed to intervene if you find that Defendant Dettmer violated Ms. LeTray's rights.

To succeed on her claim for failing to intervene, Ms. LeTray must show that: (1) the additional defendant officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the Ms. LeTray's constitutional rights were being violated; and (3) the defendant did not take reasonable steps to intervene.[13]

---

[13] *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub. nom.*, 461 F. App'x 18 (2d Cir. 2012) (summary order).

## <u>Section 1983 Claim 5: Fourth Amendment—EXCESSIVE USE OF FORCE</u>

Ms. LeTray claims that Defendants violated her rights by subjecting her to excessive force. The Fourth Amendment of the United States Constitution protects a person's right not to be subjected to unreasonable or unnecessary force by a police officer or corrections officers. In determining whether a Defendant used unreasonable or unnecessary force, you must consider whether the defendant used force that is objectively unreasonable in light of the facts and circumstances confronting the officers. In other words, you must determine whether a Defendant used more force than *a reasonable and prudent officer* would have used under similar circumstances.

When considering whether the force used was objectively unreasonable, you may consider: (1) whether there was a need to use any force; (2) the relationship between the need and the amount of force that was used; (3) the extent of Ms. LeTray's injury; and (4) whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the purpose of causing harm.

Here, Ms. LeTray argues that she was subjected to excessive force by Defendants Cummings and White while she was detained at the Watertown Police Station, and by Defendant Dettmer at the Jefferson County Correctional Facility.[14]

---

[14] *Burke v. Cicero Police Dep't*, No. 07 Civ. 624 (FJS/DEP), 2011 WL 1232107, at *5 (N.D.N.Y. Mar. 30, 2011) (Scullin, J.)*; Anderson v. Branen,* 17 F.3d 552, 559–60 (2d Cir.1994); *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016).

## <u>Section 1983 Claims: Third Element—Proximate Cause</u>[15]

The third element of Ms. LeTray's Section 1983 claims is that the defendants' acts were a proximate cause of the injuries she sustained.  Proximate cause means that there must be a sufficient causal connection between the act or omission of a defendant and any injury or damage sustained by the plaintiff.  An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury—that is, if the injury or damage was a reasonably foreseeable consequence of the defendant's act or omission.

A proximate cause need not always be the nearest cause either in time or in space.  In addition, there may be more than one proximate cause of an injury or damage.  Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

---

[15] John S. Siffert et al., *Modern Federal Jury Instructions, Civil*, Form 87-79, Matthew Bender & Company, Inc. (1993) (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

**Section 1983 Claims: Liability of Watertown or Jefferson County Based on Unlawful Practice or Custom**[16]

Ms. LeTray also brings claims against the Defendants City of Watertown and Jefferson County (the "Municipal Defendants") arguing that they are liable for the Equal Protection violations committed by the Individual Defendants employed by them who engaged in discrimination on the basis of her transgender status. To prevail on her claims based on an unlawful practice or custom, Ms. LeTray must prove each of the following elements by a preponderance of the evidence:

1. That the Individual Defendants acted under color of state law, and, once again, I have instructed you that they did;

2. That one or more of the Individual Defendants' acts deprived the Plaintiff of her rights under the Equal Protection Clause to be free from discrimination as I previously explained to you;

3. That the Individual Defendant acted pursuant to an official policy or a widespread or longstanding practice or custom of the relevant Municipal Defendant; and

4. That the Municipal Defendant's official policy or widespread or longstanding practice or custom caused the deprivation of Ms. LeTray's rights as the moving force behind the constitutional violation.

An official policy, practice or custom means any longstanding, widespread, or well-settled practice or custom that constitutes a standard operating procedure of a municipal defendant. Ms. LeTray does not need to prove that the practice or custom was formally approved

---

[16] SJ Order at 8; *see also Matusick v. Erie Cnty. Water Auth.*, 739 F.3d 51, 82 (2d Cir. 2014), *amended and superseded on reh'g*, 757 F.3d 31 (2d Cir. 2014) ("A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."); *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

by the City or County's official decision-making channels. Whether an official practice or custom exists is a question of fact for you to determine.

Here, as to Watertown, Ms. LeTray argues that the Defendant City of Watertown's sex-specific policing policies—created by Defendant Chief Donoghue—led officers to discriminate against her as described above. As to Jefferson County, Ms. LeTray argues that the Defendant Jefferson County's sex-specific policies—created by Defendant Sheriff O'Neill and Jail Administrator Spencer—led officers to discriminate against her as described above.

## <u>Section 1983 Claims: Liability of Watertown or Jefferson County Based on Failure to Train[17]</u>

Ms. LeTray also alleges that the Defendants City of Watertown and Jefferson County (the "Municipal Defendants") are liable based on their official policies and practices of failing to train employees so as to prevent violations of the law. To prevail on against either Municipal Defendant on a "failure to train" claim, she must prove each of the following elements by a preponderance of the evidence:

1. That the Individual Defendants acted under color of state law, and, once again, I have instructed you that they did;

2. That one or more of the Individual Defendants' acts deprived the Plaintiff of her rights under the Equal Protection Clause to be free from discrimination as I previously explained to you;

3. That the training policies of the relevant Municipal Defendant were not adequate to prevent violations of law by employees;

4. That the relevant Municipal Defendant was deliberately indifferent to the substantial risk that its training policies were inadequate to prevent violations of law by its employees; and

5. That the failure of the relevant Municipal Defendant to prevent violations of law by its employees by failing to provide adequate training caused the deprivation of Plaintiff's rights—in other words, that the failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

---

[17] See e.g., *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003); *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Ms. LeTray argues as to Watertown that the Watertown Police Department's failure to conduct any trainings to instruct WPD officers on the rights and proper treatment of transgender people caused her to be subjected to discrimination. As to Jefferson County, Ms. LeTray argues that the Jefferson County Sheriff's failure to provide any trainings for staff on the treatment of transgender individuals caused Defendant Dettmer's discriminatory treatment.

[standard instruction for actual/compensatory damages including lost wages]

**Statutory Damages**[18]

      If you find that any defendant violated the New York State Civil Rights Law section 40-c, which I have discussed above, or if any defendant aided or incited such a violation, then Ms. LeTray is entitled to statutory money damages based on the number of violations that you identify. For each instance of unlawful discrimination, and for each instance of aiding or inciting such discrimination, Ms. LeTray is entitled to an amount no less than $100 and no more than $500 in statutory damages.

      In other words, if you find that any defendant has violated the New York State Civil Rights Law or aided or incited its violation, you must identify and count each instance of unlawful discrimination or unlawful aiding or inciting. You must then award an amount between $100-$500 for each instance, then add those numbers up to for each defendant to calculate the total amount of statutory damages to which Ms. LeTray is entitled.

---

[18] N.Y. Civ. Rights L. §§ 40-c, 40-d; *see also Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 590 N.E.2d 228, 232 (1992) ("[T]he Civil Rights Law establishes a private cause of action to recover a statutory penalty against those who violate these rights or who aid or incite such a violation."); *People by Abrams v. Hamilton*, 125 A.D.2d 1000, 1001 (4th Dept. 1986) (affirming "penalties on behalf of individual victims" of discrimination "in accord with Civil Rights Law § 40–d").

## Exemplary or Punitive Damages[19]

If you award Ms. LeTray actual damages, then you may also make her a separate and additional award of exemplary or punitive damages. You may also make an award of punitive damages even if you find that Ms. LeTray has failed to establish actual damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant and others like them from committing such conduct in the future.

You may award punitive damages if you find that the acts or omissions of the Individual Defendants were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done in a reckless or callous disregard of, or indifference to, the rights of the injured person. The plaintiff has the burden of proving, by a preponderance of the evidence, that a defendant acted maliciously or wantonly with regard to the plaintiff's rights.

An intent to injure exists when a defendant has a conscious desire to violate rights of which they are aware, or when a defendant has a conscious desire to injure a plaintiff in a manner they know to be unlawful. A conscious desire to perform the physical acts that caused a plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that a defendant has a conscious desire to violate rights or injure the plaintiff unlawfully.

If you find by a preponderance of the evidence that an Individual Defendant acted with malicious intent to violate the plaintiff's rights or unlawfully injure her, or if you find that an Individual Defendant acted with a callous or reckless disregard of Ms. LeTray's rights, then you

---

[19] John S. Siffert et al., *Modern Federal Jury Instructions, Civil*, Form 87-92, Matthew Bender & Company, Inc. (1993) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986); *Smith v. Wade*, 461 U.S. 30 (1983); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Carlson v. Green*, 446 U.S. 14 (1980); *Carey v. Piphus*, 435 U.S. 247 (1978)).

may award punitive damages against that Defendant. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter them and others like them from performing similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether the defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages standing alone are likely to deter or prevent this defendant from again performing any wrongful acts they may have performed, or whether punitive damages are necessary to provide deterrence.

Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those the defendant may have committed. If you decide to award punitive damages, these same purposes should be considered by you in determining the appropriate sum of money to be awarded as punitive damages. That is, in fixing the sum to be awarded, you should consider the degree to which the defendant should be punished for their wrongful conduct, and the degree to which an award of one sum or another will deter the defendant or persons like them from committing wrongful acts in the future. The extent to which a particular sum of money will adequately punish a defendant, and the extent to which a particular sum will adequately deter or prevent future misconduct, may depend upon the financial resources of the defendant against which damages are awarded.

Dated: June 10, 2024
      New York, New York

Respectfully submitted,

*/s/ Jessica Perry*
Jessica Perry (702461)
Robert Hodgson (518648)
Veronica Salama (703812)
Molly K. Biklen (515729)
Attorneys for Plaintiff
NEW YORK CIVIL LIBERTIES UNION
      FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
E-mail: jperry@nyclu.org
        rhodgson@nyclu.org
        vsalama@nyclu.org
        mbiklen@nyclu.org

*/s/ Joshua Cotter*
Joshua Cotter (518217)
Samuel C. Young (508916)
Attorneys for Plaintiff
LEGAL SERVICES OF CENTRAL NEW
      YORK, INC.
221 South Warren Street, 3rd Floor
Syracuse, New York 13202
Tel: (315) 703-6500
Fax: (315) 703-6520
E-mail: jcotter@lscny.org
        samyoung@lscny.org