UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DEANNA LETRAY,

                Plaintiff,

v.

JEFFERSON COUNTY; CITY OF WATERTOWN; COLLEEN O'NEILL, Jefferson County Sheriff; KRISTOPHER M. SPENCER; JOEL DETTMER; CHARLES DONOGHUE, City of Watertown Police Chief; GEORGE CUMMINGS; SAMUEL WHITE; DEBORAH DAVIS and PATRICK LARKINS,

                Defendants.

20-CV-1194 (FJS) (TWD)

**STIPULATION AND ORDER OF DISMISSAL**

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, counsel for the Plaintiff and counsel for the Defendants (the "Parties"), that whereas no party hereto is an infant or incompetent person for whom a committee has been appointed and no person not a party has an interest in the subject matter of the action, the above entitled action be dismissed against City of Watertown, Charles Donoghue, George Cummings, and Samuel White (collectively, the "Watertown Defendants"), pursuant to the Settlement Agreement and Release attached to this Stipulation as "Exhibit 1," with prejudice and without costs to any party as against the other. This Court shall retain jurisdiction over the Settlement Agreement for enforcement purposes.

Dated: August 13, 2024
    New York, New York

/s/ Jessica Perry
Jessica Perry (702461)
Robert Hodgson (518648)
Veronica Salama (703812)
Molly K. Biklen (515729)
NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
E-mail: jperry@nyclu.org

*Counsel for Plaintiff DeAnna LeTray*

Dated: August 13, 2024
    Syracuse, New York

/s/ Joshua Cotter
Joshua Cotter (518217)
Samuel C. Young (508916)
LEGAL SERVICES OF CENTRAL NEW
  YORK, INC.
221 South Warren Street, 3rd Floor
Syracuse, New York 13202
Tel: (315) 703-6500
Fax: (315) 703-6520
E-mail: jcotter@lscny.org

*Counsel for Plaintiff DeAnna LeTray*

Dated: August 26, 2024
    Syracuse, New York

Jonathan Fellows (101628)
Collin Michael Carr (703125)
BOND SCHOENECK & KING, PLLC –
  SYRACUSE
One Lincoln Center
Syracuse, NY 13202
E-mail: fellowj@bsk.com

Dated: September 4, 2024
Syracuse, New York

*Counsel for Defendants City of Watertown, Charles Donoghue, George Cumming & Samuel White*

_____
Kayla Arias (519953)
Brian Whiteley (515896)
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Tel: (315) 413-7227
Fax: (315) 703-7306
E-mail: karias@barclaydamon.com

*Counsel for Defendants Jefferson County, Colleen O'Neill, Kristopher M. Spencer, Joel Dettmer, Deborah Davis & Patrick Larkins*

IT IS SO ORDERED:

_____
Hon. Frederick J. Scullin, Jr.
Senior United States District Court Judge

Dated: _____, 2024

3

# EXHIBIT 1

SETTLEMENT AGREEMENT AND RELEASE

WHEREAS, DeAnna LeTray ("Ms. LeTray") commenced an action in the United States District Court for the Northern District of New York (Civil Action No.: 5:20-cv-1194) (the "Action"), and

WHEREAS, the complaint in the Action named the City of Watertown, Chief of Police Charles Donoghue, George Cummings and Samuel White as defendants (the "Watertown Defendants"), and

WHEREAS, the Watertown Defendants denied the allegations in the complaint in the Action and denied any liability to Ms. LeTray, and

WHEREAS, the Action was scheduled for trial on July 8, 2024, and

WHEREAS, the parties wish to avoid the expense and risks of further litigation and trial, it is, therefore,

AGREED AS FOLLOWS:

1. The City of Watertown will pay Ms. LeTray $5,000.00 in full resolution of all of the claims in the Action (the "Settlement Payment"), inclusive of any claim for attorney's fees in the Action, said payment to be made within thirty (30) days of the execution of this Settlement Agreement;

2. The City of Watertown agrees that the Watertown Police Department will adopt a policy (the "Settlement Policy") with respect to transgender individuals in the form of the policy attached as Exhibit A, within sixty (60) days of the execution of this Settlement Agreement;

3. The parties agree that this Settlement Agreement is entered into as a compromise of disputed claims and does not constitute an admission of liability to Ms. LeTray by the Watertown Defendants with respect to any of the claims in the Action;

4. In consideration of the Settlement Payment and the adoption of the Settlement Policy, Ms. LeTray hereby releases the Watertown Defendants, and all other employees and officers of the City of Watertown, from any claims she has or may have against them from the beginning of time to the date of this Settlement Agreement, including any claim for attorney's fees in the Action.

5. Within seven (7) days of the making of the Settlement Payment or Ms. LeTray's receipt of confirmation that the Watertown Police Department has adopted the Settlement Policy, whichever comes later, counsel for Ms. LeTray will execute and return to counsel for the Watertown Defendants a stipulation of dismissal with prejudice of all claims in the Action as against the Watertown Defendants.

_____
DeAnna LeTray
Dated: July 17, 2024

18027222

City of Watertown

By: *Sarah Compo Pierce*
     Mayor Sarah Compo Pierce

Dated: 7-16-24

# EXHIBIT A

## Overview

Send Link    Help

| Order Number | Date | Title | Category |
|---|---|---|---|
| V1/A1/S54.00 | 07/29/2024 | Interactions with Transger | Professional Conduct |

54.00     Interactions with Transgender Individuals

- A. The purpose of this policy is to advise all members of the Watertown Police Department of their sworn duty and responsibility to follow the established department guidelines for the appropriate treatment of transgender, intersex, non-binary, and gender non-conforming individuals (transgender*) who come into contact with members of the Watertown Police Department

- B. The Watertown Police Department is committed to the respectful and professional treatment of transgender* persons and is cognizant of the fact that transgender* persons are disproportionally the victims of hate based, violent crimes and are more likely to be the victims of crimes than the perpetrators of crimes

- C. The Watertown Police Department is committed to working with all diverse communities in which it serves with fairness and dignity

    - 01. Members of the Watertown Police Department shall interact with all citizens in a manner that is professional, respectful, and courteous

    - 02. Personnel will not exhibit any bias, nor will they pre-judge, or discriminate against an individual or group based on their actual or perceived sexual orientation, gender identity, or gender expression

    - 03. Personnel will address members of the public using their pronouns, titles of respect, and name as expressed by the individual, regardless of what is listed on their government issued identification

        - a. If members are uncertain about which pronouns are appropriate, the employee should respectfully ask the individual

        - b. Personnel will not use language that is demeaning or degrading in content or tone, understanding that

    it is equally unacceptable to use non-derogatory language in a derogatory manner or tone

 D. This policy shall be readily accessible to the public at no cost via the Department's website and external search engines

## 54.01 Definitions

 A. <u>Adopted name</u> - non-birth name that a transgender* individual uses in self-reference (this may or may not be the individual's legal name)

 B. <u>Transgender*</u> - an umbrella term for a person whose gender identity or expression differs from the sex they were assigned at birth. For example, if a person is born female, but ultimately identifies as a male, that person would be described as transgender* male

 C. <u>Gender expression</u> - how a person expresses their gender. This can include clothing, hairstyles, makeup, mannerisms, behavior, speech patterns, and more. An individual's characteristics and behaviors (such as one's name, pronoun, appearance, dress, mannerisms, speech patterns, and body characteristics) that may express one's gender identity

 D. <u>Gender identity</u> - an individual's deeply held internal knowledge or sense of being male, female, neither, or no gender, which may or may not correspond to the individual's physical characteristics or sex assigned at birth. Gender identity may or may not be visible to others or expressed outwardly through a person's choses pronouns, haircut, dress, behavior, or voice

## 54.02 Procedure

 A. Personnel will adhere to the following procedures during departmental contacts with and the arrests of transgender* individuals

01. Members shall not request identification or otherwise initiate contact solely based on actual or perceived gender identity, gender expression or sexual orientation

02. Members shall not inquire about intimate details of an individual's sexual practices, genitals, anatomy or medical history, or conduct a search to determine a person's anatomy or determine gender

03. Members shall not use language that is demeaning or derogatory to another person, in particular, language aimed at a person's actual or perceived gender identity, gender expression, or sexual orientation. Members shall not use language that is demeaning or degrading in content or tone, or use non-derogatory language in a derogatory manner or tone

04. Members shall not engage in any sexual harassment of members of the public while on duty, including intentionally mis-identifying gender ("misgendering")

05. Members shall not consider an individual's gender identity, gender expression, or actual or perceived sexual orientation as a reason to stop, question, search or arrest that individual, a basis for reasonable suspicion, or as prima facie evidence that the individual is, has or is about to engage in a crime of any kind

06. Members shall not fail to respond to a call or act upon a scene based on gender identity or gender expression

54.03   Duties and Responsibilities of all Members

A. It shall be the duty and responsibility of all members of the Department to:

01. Address the public using names, pronouns and titles of respect appropriate to the individual's gender identity or gender expression as expressed by the individual (e.g. "she, her" for an individual who uses she/her pronouns;

"he, his" for an individual who uses he/his pronouns; "they, them" for an individual who uses they/them pronouns). The goal is to be the most inclusive and respectful to all individuals

02. Treat transgender* individuals in a manner respectful of the individual's gender identity or gender expression, aware that this may be different from their sex assigned at birth or what is listed on their official government-issued identification

03. If an individual states that, in order to be consistent with their gender identity, they use a name that is different from the name listed on their government-issued identification, members shall address and refer to that individual by their requested name. Nevertheless, members shall use the individual's name on a government-issued identification or other formal document when completing paperwork (as described below) or communicating with courts or other public agencies

04. Provide appropriate medical attention:

 a. In the event a transgender* individual requests medical attention the officer shall promptly request medical assistance. Officers shall render emergency first aid within the limits of their individual skills, training and available equipment until professional medical assistance arrives

05. Pertinent information regarding a person's gender identity or transgender* status shall be shared only with appropriate staff on a need-to-know basis, and not at all with other people in WPD custody. To extent a transgender* person wishes to speak openly about their own such information, though, they may not be prohibited from doing so

54.04   Gender Classification when a Transgender* Person is a Victim

or Witness

A. When necessary for documenting an incident, a transgender* person's gender will be classified as it appears on the individual's government-issued identification card

    01. Officers should be aware that identification may be accompanied by a physician's letter explaining gender identity, sometimes called a "carry letter", which would further document an individual's gender identity or gender expression

    02. If the person identifies with a gender different than what is listed on their government identification, the officer should make a note of the gender identity under the narrative section of the necessary report. This would include pronouns the person uses. Members shall consult the narrative section of any reports which they review to ensure they refer to all individuals correctly

    03. If an individual explicitly informs personnel that they are transgender*, and an officer finds a record for an individual (NCIC or other law enforcement record) that lists a different gender from what the individual is currently presenting, the officer will document the information in the narrative section of the New York State Incident Report

54.05   Additional Procedures for Gender Classification While Processing a Transgender* Person for Arrest

A. For the purposes of listing gender on citations, arrest reports, and other official documentation, members shall use the designation listed in the most recent records in official government databases in use by the WPD

    01. This does not negate what pronouns the person uses to identify themselves

B. For the purposes of listing an individual's name on citations,

arrest reports, or other official documentation, members shall use the name listed on the individual's government-issued identification card, or in the most recent records in official government databases in use by the WPD

    01. Members shall record the individual's adopted name in the "alias" section of such documentation

        a. NOTE: While the WPD recognizes the potential negative connotation associated with the term "alias", the use of such term is institutional of the criminal justice system and is in no way intended to be disrespectful to, or dismissive of, transgender* individuals

C. In the event that a government-issued identification card is unavailable, the arrestee will be classified according to their self-identification

D. If there is uncertainty regarding the appropriate classification of an arrestee's gender, a supervisor will be consulted for guidance on the appropriate classification (e.g., in situations in which the arrestee does not have identification, and will not speak to police, supervisors can attempt to establish communication necessary to make a determination of the arrestee's gender or use the arrestee's gender expression for classification)

## 54.06 Transportation and Searches

A. Unless there are exigent circumstances, a transgender* prisoner shall be transported alone

B. An officer of the individual's gender identity, when practical, will be present during the transport

C. Transporting officers shall notify police radio with their beginning and ending mileage

D. Transgender* juvenile arrestees shall be processed in

accordance with WPD juvenile transportation policies

- E. In situations involving the transfer of transgender* prisoners to county prisons or other police agencies, the officer will ensure that the paperwork accompanying the prisoner adequately describes gender identity information, in a manner consistent with the policy

- F. Searches:

    - 01. Transgender* persons shall not be subject to more invasive search or frisk procedures than non-transgender ("cisgender") persons

    - 02. Members shall continue to use standard practices and procedures when conducting field interviews, pat frisks for weapons, or investigative contacts in a manner that does not unreasonably endanger themselves or another person

    - 03. Members shall not stop, detain, frisk, or search any person in whole or in part for the purpose of determining that person's gender or in order to call attention to the person's gender expression. This limitation does not prevent an officer from following established Department procedures relative to ensuring the proper processing of suspects

    - 04. Where feasible, all searches of the transgender* individual shall be conducted in the presence of at least one other officer. If available, the officer conducting the search should be of the preferred gender of the individual being searched. If the suspect does not specify a preference, then the search shall be conducted by a female officer if available

## 54.07   Booking

- A. For the purposes of taking a booking photograph, a transgender* person will be permitted to be photographed

consistently with their everyday appearance—in the same way a cisgender person would be—and will not be forced to remove basic appearance-related items that conform their appearance with their gender identity (e.g., makeup, clothing, hairpieces, prosthetics)

    01.   In the event that a transgender* person's appearance upon arrest in inconsistent with a photograph on their government-issued identification, or if the officer believes that the person's appearance upon arrest is not consistent with their everyday appearance, the officer may require the removal of such items for a second, alternative booking photograph that would be consistent with their government-issued identification or the everyday appearance

B.   Nothing in this section would prohibit an officer from searching an arrestee, including their clothing or hair, for contraband. But if an item connected to that person's gender expression must be searched, or removed for a second, alternative booking photograph, it shall be returned to the individual for the booking photograph and while they are in police custody once it is determined it is free of contraband and does not pose a safety risk

54.08      Responsibilities of Supervisory/Command Officers

A.   It shall be the duty and responsibility of all supervisory and Commanding Officers to:

    01.   Continually examine all areas of police action and operations under their control to discover procedural defects and violation of policies, rules and procedures

    02.   Receive, record, and investigate complaints, regardless of their source (e.g. internal, external, or precautionary), pertaining to gender profiling

    03.   Review and approve applicable departmental reports

    04. Take appropriate disciplinary action to address sustained complaints of discriminatory profiling

54.09     Training

  A. This policy will be distributed to all Watertown Police Officers within ten (10) days of its adoption by the Watertown Police Department, and all Watertown Police Officers will be required to certify that they have reviewed this policy within thirty-one (31) days of its adoption by the Watertown Police Department

  B. Training on this policy will be included in future police academies during the Basic Course for Police Officers and an in-service training will be conducted within twelve (12) months after the adoption of the policy, and every second year thereafter

Issued: 07/29/24 Chief of Police
Reviewed:
Amended: