UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DEANNA LETRAY,

                    Plaintiff,

          v.

JEFFERSON COUNTY; CITY OF
WATERTOWN; COLLEEN O'NEILL, Jefferson          20-CV-1194 (FJS) (TWD)
County Sheriff; KRISTOPHER M. SPENCER;
JOEL DETTMER; CHARLES DONOGHUE, City
of Watertown Police Chief; GEORGE
CUMMINGS; SAMUEL WHITE; DEBORAH
DAVIS and PATRICK LARKINS,

                    Defendants.

**STIPULATION AND ORDER OF DISMISSAL**

          IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned,

counsel for the Plaintiff and counsel for the Defendants (the "Parties"), that whereas no party

hereto is an infant or incompetent person for whom a committee has been appointed and no

person not a party has an interest in the subject matter of the action, the above-entitled action be

dismissed against Jefferson County, Colleen O'Neill, Kristopher M. Spencer, Joel Dettmer,

Deborah Davis, and Patrick Larkins (collectively, the "Jefferson Defendants"), pursuant to the

Settlement Agreement and Release attached to this Stipulation as "Exhibit 1," with prejudice and

without costs to any party as against the other. This Court shall retain jurisdiction over the

Settlement Agreement for enforcement purposes.

Dated: October _23_, 2024
New York, New York

Jessica Perry (702461)
Robert Hodgson (518648)
Veronica Salama (703812)
Molly K. Biklen (515729)
NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
E-mail: jperry@nyclu.org

*Counsel for Plaintiff DeAnna LeTray*

Dated: October 23, 2024
Syracuse, New York

Joshua Cotter (518217)
Samuel C. Young (508916)
LEGAL SERVICES OF CENTRAL NEW
  YORK, INC.
221 South Warren Street, 3rd Floor
Syracuse, New York 13202
Tel: (315) 703-6500
Fax: (315) 703-6520
E-mail: jcotter@lscny.org

*Counsel for Plaintiff DeAnna LeTray*

Dated: October 16, 2024
Syracuse, New York

Jonathan Fellows (101628)
Collin Michael Carr (703125)
BOND SCHOENECK & KING, PLLC –
  SYRACUSE
One Lincoln Center
Syracuse, NY 13202
E-mail: fellowj@bsk.com

*Counsel for Defendants City of Watertown,*
*Charles Donoghue, George Cumming &*
*Samuel White*

2

Dated: October ⟨17⟩, 2024
Syracuse, New York

_____

Kayla Arias (519953)
Brian Whiteley (515896)
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Tel: (315) 413-7227
Fax: (315) 703-7306
E-mail: karias@barclaydamon.com

*Counsel for Defendants Jefferson County,
Colleen O'Neill, Kristopher M. Spencer, Joel
Dettmer, Deborah Davis & Patrick Larkins*

IT IS SO ORDERED:

_____

Frederick J. Scullin, Jr.
**Senior United States District Judge**

Dated: _____ October 24 , 2024

# Exhibit 1

SETTLEMENT AGREEMENT AND RELEASE

WHEREAS, DeAnna LeTray ("Ms. LeTray") commenced an action in the United States District Court for the Northern District of New York (Civil Action No.: 5:20-cv-1194) (the "Action"), and

WHEREAS, the Second Amended Complaint in the Action named Jefferson County, Colleen O'Neill, Kristopher M. Spencer, Joel Dettmer, Deborah Davis, and Patrick Larkins as defendants (the "Jefferson County Defendants"), and

WHEREAS, the Jefferson County Defendants denied the allegations in the complaint in the Action and denied any liability to Ms. LeTray, and

WHEREAS, the Action was scheduled for trial on July 8, 2024, and

WHEREAS, the parties wish to avoid the expense and risks of further litigation and trial, it is, therefore,

AGREED AS FOLLOWS:

1. Jefferson County will pay Ms. LeTray $7,500.00 in full resolution of all of the claims in the Action (the "Settlement Payment"), inclusive of any claim for attorney's fees in the Action, said payment to be made within thirty (30) days of the execution of this Settlement Agreement;

2. Jefferson County agrees that the Jefferson County Sheriff's Office will adopt a policy (the "Settlement Policy") with respect to transgender individuals in the form of the policy attached as Exhibit A;

3. The parties agree that this Settlement Agreement is entered into as a compromise of disputed claims and does not constitute an admission of liability to Ms. LeTray by the Jefferson County Defendants with respect to any of the claims in the Action;

4. In consideration of the Settlement Payment and the adoption of the Settlement Policy, Ms. LeTray, for herself, her heirs, executors, administrators, representatives, successors and assigns, hereby irrevocably and unconditionally releases, waives and forever discharges the Jefferson County Defendants, and all other current and former Jefferson County officers, employees and agents, whether in their official or individual capacities, and all of their heirs, executors, administrators, representatives, successors and assigns (collectively referred to as "Released Parties"), from and against any and all liabilities, claims, actions, demands, damages, and costs of every nature whether in law or in equity and in courts or administrative agencies, that Ms. LeTray has or may have against the Released Parties from the beginning of time to the date of execution of this Settlement Agreement, to also include any and all claims for attorney's fees in this Action.

5. Within seven (7) days of the making of the Settlement Payment, counsel for Ms. LeTray will execute and return to counsel for the Jefferson County Defendants a stipulation of dismissal with prejudice of all claims in the Action as against the Jefferson County Defendants.

1

6. Within (30) days of receiving the stipulation of dismissal from counsel for Ms. LeTray, counsel for Jefferson County will confirm in writing that the Jefferson County Sheriff's Office has adopted and promulgated the Settlement Policy, attached as <u>Exhibit A</u>.

For Plaintiff:

By: _____
    Plaintiff DeAnna LeTray

Dated: 10/4/24 _____

For Jefferson County Defendants:

By: _____
    John Sabik, County Attorney

Dated: 10/03/24

2

# Exhibit A

| | |
|---|---|
| **JEFFERSON COUNTY SHERIFF'S OFFICE CORRECTIONS DIVISION**<br><br>INCARCERATED INDIVIDUALS<br><br><br>**POLICIES AND PROCEDURES** | **POLICY NUMBER:** CD-04-04-01<br><br>**SUPERSEDES:** All Previous<br><br>**EFFECTIVE DATE:**  May 1, 2024<br><br>Page    1    of    11    Pages |
| **SUBJECT:**<br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | **ISSUE TO:**<br>   All Corrections Personnel |
| **AUTHORITY OF:**<br>Sheriff:<br><br>Date:        /      /<br><br>Undersheriff :<br><br>Date:        /      / | **ISSUED BY**<br>Administrator:<br><br>Date:         /        /<br><br><br><br>**Control Number:**  24-179-01 |

**REFERENCE:** NYSCRR TITLE 9, SUBTITLE AA, NYS Commission of Corrections Minimum Standards; NYCLU Correspondence with Recommendations to Yates County Sheriff's Office, Broome County Sheriff's Office Policy, PREA.

**POLICY:**    Consistent with our institutional values of safety, security, humane treatment, and professionalism, it shall be the policy of the Jefferson County Sheriff's Office Correctional Division to receive, evaluate, house and provide secure, safe and humane custody of all persons, including transgender, gender nonbinary, gender nonconforming, and intersex incarcerated individuals, who are committed to its custody. The JCCF shall treat all people in its custody in a professional, respectful, and courteous manner that is consistent with all their rights under state and federal law. Any alleged violation of this policy as it relates to the treatment of any person housed in the JCCF will be fully investigated, and appropriate action taken to remedy a confirmed violation. A summary of this policy (Addendum 1) will be posted in the main lobby of the JCCF as a statement of expected behavior of all visitors to the JCCF. A plain language statement of this policy (Addendum 2) will be inserted in the incarcerated individual handbook, uploaded to each incarcerated individual tablet, and posted in the Jefferson County Sheriff's Office, in the common area of each JCCF housing unit (e.g., each pod bulletin board), and in each area used to conduct facility intake.  The plain language summary of this policy will be made available in a language accessible to anyone whose primary language spoken is not English. The Jefferson County Sheriff's Office contracts with a third-party vendor and is available to translate verbal conversation, documents, handbooks, etc. A full copy of the policy will be inserted in the service provider's

| SUBJECT: **LGBTI** (Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | NUMBER: CD-04-04-01 | EFFECTIVE DATE: May 1, 2024 | |
|---|---|---|---|

manual and will be available to people in custody via the kiosks that are in each housing unit. Where the provisions of any existing Jefferson County Sheriff's Office or JCCF policy conflict with this Policy, this Policy supersedes those provisions.

**PURPOSE:** To provide guidelines for safe confinement of lesbian, gay, bisexual, transgender, gender nonbinary, gender nonconforming, and intersex (LGBTI) incarcerated individuals and to comply with State and Federal legal/accrediting standards related to this population, including, but not necessarily limited to:

    A. Elimination/reduction of discrimination and other stigmatization.

    B. Appropriate classification and safe, secure housing.

    C. Ensuring personal safety and appropriate access to programs and care, while maintaining facility safety and the safety of all persons therein.

**DEFINITIONS:**

**Bisexual:** A person who is romantically or sexually attracted to more than one gender or sexual category.

**Gay:** Commonly refers to men typically attracted to other men.

**Gender identity:** Distinct from sexual orientation and refers to a person's internal, deeply felt sense of being male or female, neither, or no gender, which may or may not correspond to the individual's physical characteristics or Sex Assigned at Birth. Gender Identity may or may not be visible to others or expressed outwardly through a person's chosen pronouns, haircut, dress, behavior, or voice..

**Gender expression:** A person's outward manifestation of their sex or gender, often through behavior, clothing, hairstyles, name, or pronouns.

**Gender Dysphoria:** A state of severe distress or unhappiness caused when one's gender identity does not match one's sex as assigned at birth.

**Assigned sex:** The sex-based classification of an infant, usually based solely on external genitalia, that occurs when they are born. This is generally the sex that is originally recorded on an infant's birth certificate.

**Affirmed sex:** The self-reported sex-based classification of an individual that aligns most closely with their gender identity.

| SUBJECT:<br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender,<br>Intersex) Guidelines for Safe Confinement | NUMBER:<br>CD-04-04-01 | EFFECTIVE DATE:<br>May 1, 2024 | |
|---|---|---|---|

**Intersex:** A person whose sexual or reproductive anatomy or chromosomal pattern does not seem to fit typical definitions of male or female.

**Lesbian:** Commonly refers to women typically attracted to other women.

**LGBTI:** Acronym including lesbian, gay, bisexual, transgender, gender nonbinary, gender nonconforming, questioning, and intersex individuals.

**Gender nonbinary:** An adjective describing a person whose gender identity does not conform to the binary ("one or the other") categories of male or female. This person may self-identify as "nonbinary."

**Gender nonconforming:** An adjective describing a person whose gender expression is outside of sex-based societal assumptions about how they should look or behave. For example, a woman who dresses and cuts her hair in a manner that is stereotypically associated with men.

**Sexual orientation:** Romantic, physical, and/or emotional attraction to another person.

**Transgender (or Trans):** An adjective describing a person whose gender identity (i.e., internal sense of feeling male or female) is different from their assigned sex assigned at birth.

**Transgender woman**: A person whose sex-assigned-at-birth was male but is female may describe herself as a "transgender woman," "trans woman," or "woman.".

**Transgender man:** A person whose sex-assigned-at-birth was female but is male may describe himself as a "transgender man," "trans man," or "man."

**Cisgender:** Describes a person whose gender identity corresponds to their sex assigned at birth.


**PROCEDURE:**

I.  EMPLOYEE CONDUCT

    A.  The Jefferson County Sheriff's Office maintains a zero-tolerance policy for any staff sexual misconduct (which includes sexual contact and/or sexual harassment) directed towards any incarcerated individual, including incarcerated individuals that identify as LGBTI.

    B.  Any substantiated claim of sexual misconduct by a staff member towards an incarcerated individual may result in discipline up to and including termination of the staff member's employment and/or referral for criminal charges.

| SUBJECT:<br><br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender,<br>Intersex) Guidelines for Safe Confinement | NUMBER:<br><br>CD-04-04-01 | EFFECTIVE DATE:<br><br>May 1, 2024 | |
|---|---|---|---|

C. The Jefferson County Sheriff's Office maintains a zero-tolerance policy for the use of derogatory terms towards any members of the LGBTI community. Use of such terms directly violates Jefferson County Sheriff's Office code of conduct.

D. Staff shall not engage in any harassment or discrimination based on actual or perceived sex, sexual orientation, gender identity, or gender expression. A person's access to any rights, privileges, or opportunities available to other people in custody, including the right to seek protection or report instances of harassment or intimidation, shall not be denied or restricted due to that person's actual or perceived sex, sexual orientation, gender identity, or gender expression. A person who makes a complaint or seeks staff assistance about harassment, intimidation, threats, or violence shall not be denied such assistance or disbelieved due to that person's actual or perceived sex, sexual orientation, gender identity, or gender expression.

E. Staff shall not inquire about intimate details of an individual's sexual practices, genitals, anatomy or medical history, or conduct a search to determine a person's anatomy or determine gender.

F. Within the reasonable bounds of safety for all incarcerated individuals and staff, LGBTI incarcerated individuals shall be able to request to express themselves through grooming requests that accord with their gender identity, but all grooming requests will be subject to approval or denial based on the safety and security concerns that comply with JCCF policies.

G. Staff shall adhere to all confidentiality and privacy protections under applicable laws, including HIPAA and PREA. To the extent the person wishes to speak openly about such information, though, they may not be prohibited from doing so.

H. Staff shall report any complaint of harassment, discrimination, and/or abuse as received from an LGBTI incarcerated individual. Harassment, discrimination, and abuse due to a person's sex, sexual orientation, or gender identity or expression are not a normal or acceptable part of their incarceration and will not be tolerated. The facility will address and resolve any complaint of sexual assault, sexual harassment, or other threats to safety directed at any person in custody by any member of the staff or other person in custody.


II. COMMUNICATION

A. All communication with LGBTI incarcerated individuals shall be professional and without comments that could be deemed by a reasonable person to be harassing or demeaning.

B. Incarcerated individuals are to be addressed by the last name indicated on their

| SUBJECT:<br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender,<br>Intersex) Guidelines for Safe Confinement | NUMBER:<br><br>CD-04-04-01 | EFFECTIVE DATE:<br><br>May 1, 2024 | |
|---|---|---|---|

commitment paperwork from the Court, or by using the gender-specific identifier appropriate to the incarcerated individual's gender identity. For example, a transgender man who uses male pronouns will be addressed using expressions such as "mister" and "he/him," and a transgender woman who uses female pronouns will be addressed using expressions such as "miss" and "she/her." or by using the gender-specific identifier appropriate to the incarcerated individual's gender identity. For example, a transgender man who uses male pronouns will be addressed using expressions such as "mister" and "he/him," and a transgender woman who uses female pronouns will be addressed using expressions such as "miss" and "she/her."

C. If a transgender incarcerated individual provides Booking with a "preferred name", meaning a first name that they use in order to affirm their gender identity, staff shall not use their former name (also known as a "deadname") in communications with or about them. Staff may use their last name in their commitment paperwork, or their preferred name, consistent with how they refer to other incarcerated individuals, in communications with or about them. This paragraph will not prohibit the staff from using the incarcerated individual's former name where it appears in paperwork from the courts or other outside agencies and unless otherwise notified as set forth above regarding their preferred name. This section will not require the staff to modify records from prior incarcerations.

D. Questions relating to an incarcerated individual's gender identity or gender expression shall only be asked when necessary and related to a staff member's performing of official duties. (For example, in the context of intake, as described in Section V. of this Policy.)


## III. IDENTIFYING TRANSGENDER AND GENDER NONCONFORMING INCARCERATED INDIVIDUALS

A. A person's self-identification as transgender, gender nonbinary, gender nonconforming, or intersex, at any point before or during their time in custody, is sufficient to trigger the protections and procedures described in this policy.

1. Documentation of a medical diagnosis or legal documentation concerning a person's self-identification is not required for staff to respect or confirm a person's gender identity, absent specific evidence that a person has asserted a gender identity falsely. The fact that a person has not obtained a legal name change or has not obtained government-issued identification that reflects their affirmed sex and gender identity does not constitute such specific evidence.

B. In the event that staff believe they have identified specific evidence that a person has asserted a gender identity falsely, before acting on such evidence, they should consider all sources of countervailing evidence that would support an incarcerated

| SUBJECT: **LGBTI** (Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | NUMBER: CD-04-04-01 | EFFECTIVE DATE: May 1, 2024 | |
|---|---|---|---|

individual's asserted gender identity, including: records from the arresting agency or court staff confirming a person's gender identity as asserted; records from past custodial history confirming a person's gender identity as asserted; medical records confirming a person's treatment for gender dysphoria; corroboration from doctors, mental health providers, friends, and/or family; and/or a gender expression/outward appearance that does not align with societal expectations about their assigned sex.

C. Any questioning performed by staff shall be conducted in a respectful manner and, to the greatest extent possible, be conducted in a private setting.

## IV. PHYSICAL SEARCHES AND HANDLING

A. All searches shall be conducted in accordance with all applicable JCCF Policy and Procedure and governed by NYSCOC Minimum Standards. .

1. A transgender, gender nonbinary, gender nonconforming, or intersex person shall have the right to request that they be searched by staff of a particular sex based on their own view of what would be best for their safety and privacy. The person making the request may be searched consistently with their chosen sex designation, depending on staff availability to perform the search, staff comfort in performing the search, and any other safety and security concerns.

2. If such a request is not honored, the reasons for its denial shall be documented and made available to the person who made the request.

3. Nothing above restricts supervisors or administrators from handling valid staff requests for accommodations regarding search-related duties, in the same manner as for searches of people who are not transgender.

4. If a person's search preference is not verbalized and/or cannot be determined, the search shall be conducted in a manner consistent with a person's gender identity.

5. No search shall be conducted for the sole purpose of observing or determining a transgender, gender non-binary, or intersex person's genital characteristics. All searches will be conducted in accordance with and for the purposes set out in JCCF Policy and Procedure.

6. Searches shall be conducted in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs.

| SUBJECT:<br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender,<br>Intersex) Guidelines for Safe Confinement | NUMBER:<br>CD-04-04-01 | EFFECTIVE DATE:<br>May 1, 2024 | |
|---|---|---|---|

## V. INTAKE SCREENING AND PROCESSING

A. Screening assessments of all incarcerated individuals, including LGBTI incarcerated individuals, shall be respectfully conducted using JCCF-approved screening instruments in accordance with JCCF Policy CD-09-02-03 (Booking Procedures) and CD-09-04-00 CLASSIFICATION (General Policy).

B. During the intake screening process, if a person being admitted has not made clear what their gender identity is, the staff member conducting the intake screening will respectfully ask the person if they would like to self- identify their gender identity. In so asking, the staff members will make clear that this information will be kept confidential from others, except for members of the staff on a need-to-know basis. If the person does not understand English, these materials will be provided in a language that the person understands.

    1. Staff may seek advice from their supervisors and medical staff, as soon as practicable, during the intake process.

C. Upon completion of initial screening, all LGBTI incarcerated individuals who indicate that they take medication or have other medical or mental health needs must be referred to medical and mental health and provided an assessment and all appropriate care.

D. Staff shall ask transgender, gender nonbinary, gender nonconforming, or intersex incarcerated individuals if they have a name other than the one presented on the commitment document that they would prefer to be called. If so, the preferred name shall be documented in the corrections management software as an "alias" and understood as a "preferred name". Because the "alias" designation could be misunderstood, staff shall be made aware that the name a person uses in order to be consistent with their gender identity is not false in any way and is the proper name by which to refer to that person, except that Staff may refer to an individual by the last name indicated on their commitment paperwork as set out in Section II.B and C above..

    a. If a person states that they are neither a man nor a woman—i.e., that they are non-binary or otherwise do not identify as male or female—but a required form limits the options for designating that person's sex to MALE or FEMALE, then staff shall enter the sex designation that the person indicates. Unless a form is limited by the State to the options MALE or FEMALE, the person may request an "X" or "NONBINARY" sex designation. Pursuant to this agreement, JCCF shall modify the "gender identity" and "gender preference" categories in the Sallyport JMS form to include "X" or "NONBINARY."

| SUBJECT:<br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender,<br>Intersex) Guidelines for Safe Confinement | NUMBER:<br><br>CD-04-04-01 | EFFECTIVE DATE:<br><br>May 1, 2024 | |

    b. Pertinent information regarding a person's gender identity or transgender, intersex, or nonbinary status shall be shared only with appropriate staff on a need-to-know basis, and not at all with other people in custody. To the extent a person wishes to speak openly about such information, though, they may not be prohibited from doing so.

## VI.  HOUSING OF TRANSGENDER OR INTERSEX INCARCERATED INDIVIDUALS

A.  Housing determinations shall be individually tailored and based upon classification factors and an evaluation of the incarcerated individual's emotional and physical well-being, including a focus on minimizing the risk of sexual victimization.

B.  A transgender, gender nonconforming, gender nonbinary, or intersex person taken into custody shall have the right to request placement in a sex-segregated unit (i.e., a men's or women's unit) that is based on their own view of what would be best for their safety, including placement that is consistent with that person's gender identity or a protective placement.

C.  Where a request is made, and granted, pursuant to paragraph B. above, the person making the request will be housed in a unit consistent with the sex designation the person in custody indicated is safest for them, or protective custody if specifically requested by the incarcerated individual, unless there is no availability or safety and security concerns prevent such placement, and consistent with JCCF policies.

    1.  The requesting person's own view, with respect to his or her safety, is to be afforded serious consideration in the determination of housing.

    2.  Reasonable protective measures should be considered and implemented to facilitate the requested placement.

D.  If the Sheriff, Jail Administrator, Supervisor, medical staff, or mental health staff, after an individualized determination, have safety, security, or health concerns related to a person's stated housing preference that cannot be reasonably addressed through reasonable protective measures, the Sheriff or designee may, on a case-by-case basis, deny that person's housing placement request. Any such denial will be made as soon as practicable and:

    1.  Be documented in the jail record management system, including the bases on which such denial was made, and any alternative protective measures considered.

| SUBJECT:<br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender,<br>Intersex) Guidelines for Safe Confinement | NUMBER:<br><br>CD-04-04-01 | EFFECTIVE DATE:<br><br>May 1, 2024 | |
|---|---|---|---|

2. Be based on a specific and articulable safety, security, or health concern.

3. Not be based on any discriminatory reason, including but not limited to:

    a. The anatomy or genitalia of the person whose housing placement is at issue.

    b. The sexual orientation of the person whose housing placement is at issue; or

    c. A factor that does not bar other people in the requested housing unit.

4. In determining whether a safety, security, or health concern related to a person's stated housing preference pursuant to paragraph B. above exists, the complaints of cisgender people who would be housed with such person may be considered only to the extent such complaints state reasonable and articulable safety or security concerns that cannot be addressed through reasonable protective measures, which, if required, shall be applied. A cisgender person's general desire not to be housed with someone because they are transgender, nonbinary, gender nonconforming, or intersex is not a reasonable and articulable safety or security concern.

E. Nothing above restricts staff from handling housing-related requests from people in custody that may involve moving someone within or between units of the same designated sex based on valid medical, religious, or safety concerns, in the same manner as for people who are not transgender.

F. Any denial made pursuant to paragraph D. above shall be made as soon as possible, and no later than five (5) days after the request and shall be available to the person whose housing request has been denied. While housing decisions are final and not grievable, a person in custody may make a subsequent request based on changed circumstances or information not previously considered, and any such request shall be assessed at that time pursuant to the procedure outlined in paragraphs A. – F. above.

G. Should a transgender, intersex, gender nonbinary, or gender nonconforming person report a concern for their safety, the housing unit officer shall immediately notify their supervisor, who will in turn notify the Jail Administrator via the chain of command. A representative of the administration shall direct the shift supervisor, along with the classification officer to meet with the concerned incarcerated individual to formulate a safety plan.

| SUBJECT:<br>**LGBTI**<br>(Lesbian, Gay, Bisexual, Transgender,<br>Intersex) Guidelines for Safe Confinement | NUMBER:<br><br>CD-04-04-01 | EFFECTIVE DATE:<br><br>May 1, 2024 | |
|---|---|---|---|

H. LGBTI incarcerated individuals may not be placed on facility-directed protective custody or otherwise administratively segregated based solely upon their gender identity or sexual orientation or in violation of any state or federal law.

    1. If a transgender, gender nonconforming, gender nonbinary, or intersex person must be placed on facility-directed protective custody or otherwise administratively segregated, reviews shall be conducted pursuant to N.Y. Comp. Codes Rules. & Regs. Title 9, §7075.4 of the Minimum Standards and Regulations for Management of County Jails and Penitentiaries.

I. In addition to requests made pursuant to paragraph B. above, which will be considered as they are received, housing decisions shall be reviewed at least in accordance with minimum standards to consider changed circumstances including but not limited to:

    1. Allegations or substantiated incidents of sexual misconduct (by staff or other incarcerated individuals).

    2. Changes in appearance.

    3. Upon request of the incarcerated individual; or

    4. As the result of any other relevant information that may be received.

VII.      MEDICAL AND MENTAL HEALTH CARE

A. All LGBTI incarcerated individuals shall be seen by medical staff for intake medical assessment to determine appropriate medical care.

B. Transgender, gender nonconforming, gender nonbinary, and intersex incarcerated individuals shall also be assessed as part of the intake process for an appropriate treatment plan to include the need for continuation of community-initiated hormonal treatment and/or associated mental health services if indicated.

C. LGBTI incarcerated individuals that report past sexual victimization to any staff members shall be offered appropriate medical and mental health services.

D. All transgender, gender nonconforming, gender nonbinary, and intersex incarcerated individuals, even those that do not have a mental health diagnosis, shall be added to the Mental Health caseload as necessary and shall be seen at least monthly to assess well-being.

E. Any present or future JCCF contracted medical care or mental health care provider shall be required     to comply with this Policy and to confirm that the medical

| SUBJECT: **LGBTI** (Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | NUMBER: CD-04-04-01 | EFFECTIVE DATE: May 1, 2024 | |
|---|---|---|---|

and/or mental health professionals it employs are able to provide appropriate care for transgender patients, while incarcerated.

1. Any future provider of health care in the JCCF shall have internal policies in place for addressing treatment of patients with gender dysphoria so as to be consistent with the Policy before commencing service.

F. No person shall be denied medical or mental health care or have their access to such care restricted in any way because of their actual or perceived sex, gender identity, gender expression, or sexual orientation. For example, when a transgender person expresses a need for medical attention, staff shall handle the situation with the same urgency and respect they would offer to any other individual who sought assistance with a medical need.

G. Healthcare services, medical devices, and medications for the treatment of gender dysphoria, including prescription hormones and dilation devices for care after certain forms of gender-affirming surgery, shall be treated like any other healthcare services, medical devices, and/or medications necessary for a person in custody's health and well-being. Such services or treatments shall be provided as prescribed by medical staff.

H. Likewise, actual or perceived sex or gender identity shall not be used to justify the denial of otherwise appropriate medical care when such care is stereotypically associated with a particular assigned sex. For example, a transgender woman may need both gynecological care and treatment for a prostate condition, and her transgender status shall not be used to justify the denial of such medically necessary care.

VIII.    COMPLAINTS AND GRIEVANCES

A. Any staff member notified of a complaint regarding sexual misconduct involving an LGBTI incarcerated individual shall treat it with high priority and immediately notify a supervisor.

B. Any sexual misconduct-related complaint or grievance involving an LGBTI incarcerated individual shall be handled in accordance with the grievance procedures set forth in the Incarcerated individual Handbook.

C. The shift supervisor should be immediately notified if a grievance is reported by a transgender, gender nonconforming, gender nonbinary, or intersex incarcerated individual.

| SUBJECT: **LGBTI** (Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | NUMBER: CD-04-04-01 | EFFECTIVE DATE: May 1, 2024 | |
|---|---|---|---|

IX.  INCARCERATED INDIVIDUAL SERVICES (INCLUDING TOILETRY ITEMS, CLOTHING, AND PROGRAMMING)

A. LGBTI incarcerated individuals shall have equal access to all available services.

B. Toiletry items and clothing shall be available to people in custody in a manner that does not discriminate based on sex, gender identity, or gender expression. For example, a transgender woman shall have access to the same toiletry, clothing, and commissary items (e.g., women's undergarments, hair products, etc.) as a cisgender woman.

C. Grooming standards shall not be applied differently based on sex, gender identity, or gender expression. For example, if cisgender women are permitted to wear their hair at  a certain length or in a certain style (e.g., in a ponytail), people who are not cisgender women shall be permitted to do the same.

D. Permission to access specific items, including prosthetics, wigs, hair extensions, chest binders, tucking undergarments or gaffs, or similar items that are used by individuals to have an appearance consistent with their gender identity, may be requested during the person's initial medical assessment performed during the booking process. A person shall be given the opportunity to request that certain items that would otherwise be prohibited—including wigs and hair extensions—be used as medically-prescribed treatment for gender dysphoria, and these requests will be evaluated by the medical provider and facility administrator in a way that is consistent with other requests for accommodations pursuant to medical need and safety and security concerns.

E. Programs, educational materials, and recreation activities shall not be denied due to actual or perceived sex or gender identity. For example, group activities, resources, or classes made available to cisgender people in a particular housing unit shall also be available to transgender, gender nonconforming, gender nonbinary, or intersex people in that housing unit.

X.  STAFF TRAINING

A. Staff shall receive initial academy and every other yearly refresher training on this Policy, in addition to training on sexual misconduct and protection of incarcerated individuals, appropriate interaction with LGBTI incarcerated individuals, and associated search procedures.

| SUBJECT: **LGBTI** (Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | NUMBER: CD-04-04-01 | EFFECTIVE DATE: May 1, 2024 | |
|---|---|---|---|

### Addendum 1

### Policy of the Jefferson County Sheriff's Office Regarding Interactions with Transgender, Intersex, Gender nonbinary, or Gender Nonconforming Individuals

### The following actions will not be tolerated by any persons entering the Jefferson County Sheriff's Office or Jefferson County Correctional Facility for any reason:

- **DISCRIMINATION:** You will not discriminate against, harass, or bully any person based on who they are, including their gender identity.

- **NAMES/PRONOUNS:** People should not use the wrong name or pronouns when talking to an inmate, even if the inmate hasn't gotten a legal name change or gender marker change on their ID.

Any complaint of any such action by a visitor will be promptly investigated and confirmed violations could result in the removal of visitation rights.

### Additional Notice for JCCF Visitors:

- **SEARCHES:** You can request to be searched by a woman if you're a trans woman, or a man if you're a trans man, or by an officer of the gender you believe would be safest for you subject to staffing availability.

| SUBJECT: **LGBTI** (Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | NUMBER: CD-04-04-01 | EFFECTIVE DATE: May 1, 2024 | |
|---|---|---|---|

### Addendum 2

**Plain Language Policy Statement Regarding Interactions with Lesbian, Gay, Bisexual Transgender, Gender Nonbinary, Gender Nonconforming, and Intersex Individuals:**

This policy means that:

- **DISCRIMINATION:** You should not be harassed or bullied based on who you are, including your gender identity.

- **NAMES/PRONOUNS:** People should not use the wrong name or pronouns when talking to you, even if you haven't gotten a legal name change or gender marker change on your ID.

- **SEARCHES:** You can request to be searched by a woman if you're a trans woman, or a man if you're a trans man, or by an officer of the gender you believe would be safest for you subject to staff availability to perform the search, staff comfort in performing the search, and any other safety and security concerns.

- **HOUSING:** You can request to be housed in the unit that is consistent with your gender identity or in protective placement housing.

- **APPEARANCE:** You can request commissary items and other things that affect the way you look and your gender expression, consistent with JCCF policies.

- **MEDICAL CARE:** You can request medical and mental health care related to your gender identity, including hormones, no matter whether you had access to that same health care outside the jail.

If you think that you're being denied any of the things listed above, you can file a COMPLAINT with the housing unit officer, on duty supervisor, or the Jail Administrator.

| SUBJECT: | NUMBER: | EFFECTIVE DATE: | |
|---|---|---|---|
| **LGBTI** (Lesbian, Gay, Bisexual, Transgender, Intersex) Guidelines for Safe Confinement | CD-04-04-01 | May 1, 2024 | |

## **Addendum 3**

The following Jefferson County Sheriff's Correctional Facility policies will be updated to be consistent with, and properly cross-reference the relevant sections of, the provisions in the Policy of the Jefferson County Sheriff's Office Regarding Interactions with LGBTI Individuals (LGBTI Policy):

- Policy CD-05-08-03 (Subject: Cross-Gender Supervision)
- Policy CD-05-03-02 (Subject: Individual Searches)
- Policy CD-09-04-00 (Subject: Classification)
- Policy CD-10-14-00 (PREA)
- Policy CD-09-04-05 (Subject: Housing)
- Inmate Handbook
- Code of Conduct

Where the provisions of any existing Jefferson County Sheriff's Office or JCCF policy conflicts with the LGBTI Policy, the LGBTI Policy supersedes those provisions.